Filed 10/23/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD GONZALES, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B276101<br>(Super. Ct. No. 2014011901)<br>(Ventura County) |

Here we affirm a judgment involving various counts of Penal Code violations relating to child molestation.  The prosecution introduced evidence of uncharged sex offenses defendant committed against the victim through the victim's own testimony, not through the testimony of third parties.  (Evid. Code, § 1108, subd. (a).)  Such testimony, though not common, is in accord with established precedent.  We are concerned, however, with the relationship between CALCRIM No. 1191,[1]

---

[1] In March 2017, CALCRIM No. 1191 was modified to distinguish uncharged offenses offered as propensity evidence from charged offenses offered for that purpose.  CALCRIM No. 1191A now applies to the former, while CALCRIM No. 1191B applies to the latter.

instructing on evidence of uncharged sex offenses against the victim, and Evidence Code 1108. These concerns are well stated in Justice Perren's concurring opinion.

A jury found Richard Gonzales, Jr. guilty of two counts of oral copulation with a child 10 years old or younger (Pen. Code, §§ 288.7, subd. (b),[2] 289) (counts 1 and 3); three counts of lewd acts with a child (§ 288, subd. (a)) (counts 2, 4 and 6); and one count of sexual penetration of a child 10 years old or younger (§§ 288.7, subd. (b), 289) (count 5). The jury also found as to counts 2, 4 and 6 that Gonzales had substantial sexual contact with the child. (§ 1203.066, subd. (a)(8).)

The trial court sentenced Gonzales to three consecutive 15-years-to-life terms on counts 1, 3 and 5, for a total term of 45 years to life. The court stayed six-year sentences on counts 2, 4 and 6 pursuant to section 654.

We strike fines imposed on counts 2, 4 and 6. We reverse the order requiring Gonzales to pay the public defender but do not remand for a hearing on Gonzales's ability to pay. In all other respects, we affirm.

FACTS

L.W. was born on October 20, 2005. In January 2010, L.W. lived with her mother, J.W., and two-year-old brother, E.W., in a studio apartment in Santa Barbara. In October 2010, J.W. met Gonzales who was 41 years old. Gonzales moved into the apartment with J.W. and her children later that year. J.W. and Gonzales slept on a bed and the children slept on a futon.

---

[2] All statutory references are to the Penal Code unless stated otherwise.

*(a) Charged Offenses*
*Counts 1 and 2*

The second day Gonzales lived in the Santa Barbara apartment, J.W. and E.W. were in the bathroom with the door closed. Gonzales called L.W. to him. When she arrived, Gonzales put his penis in her mouth and moved it back and forth. He stopped when the toilet flushed.

*Counts 3 and 4*

When L.W. was seven years old, she was living with her family in a motel in Ventura. Gonzales was living with them. When J.W. and E.W. were across the street at a store, Gonzales told L.W. to get on her knees. She thought he was going to make her scrub the floor. He put his penis in her mouth and moved it back and forth. He stopped when he heard the key in the door.

*Counts 5 and 6*

In September 2013, L.W.'s mother was out and L.W. was lying on the bed watching television with her brother. Gonzales called L.W. over to the other bed. He got on top of her, pulled down her pants and underwear and inserted his penis into her vagina. When it was over, Gonzales told L.W. not to tell her mother.

*Uncharged Conduct*

In December 2011, L.W. moved to Arizona with her family and Gonzales. L.W. was in the first grade. They rented a four-bedroom house. L.W. had her own room. L.W. kept the door to her room open at night because she was afraid of the dark.

One night Gonzales came into L.W.'s room and locked the door. He climbed into bed with her, pulled down her pants and underwear and inserted his penis into her vagina.

One night Gonzales went to lie down with L.W. J.W. went to check on them because they were gone a long time. She found the door to L.W.'s room locked. She knocked and told Gonzales to open it. After a delay, he did so. J.W. asked Gonzales why the door was locked. Gonzales told her L.W. was afraid a monster would enter her room.

J.W.'s job ended and the family and Gonzales stayed with friends, Alex Ferchand and his girlfriend Nicki. Nicki told Ferchand that Gonzales was showering with the children. Ferchand confronted Gonzales. Gonzales said he was wearing shorts. Ferchand told Gonzales that he did not allow that in his house.

In December 2012, when L.W. was seven years old, the family was staying with Gonzales in Ventura. One day while L.W.'s mother and brother were in the bathroom, Gonzales came up to her with his penis sticking out. L.W. was eating. She pushed him away and told him no. The toilet flushed ending the incident.

L.W. could not remember how many times Gonzales put his penis in her mouth over the course of the years he lived with her family. She guessed Gonzales put his penis in her vagina three times.

*Investigation*

In September 2013, L.W. told her mother, "Ricky raped me." Her mother confronted Gonzales who denied it. L.W. also told fellow students. The students reported to the school principal that L.W. spoke of inappropriate sexual behavior. The principal called the police.

Ventura Police Detective Eric Vazquez interviewed L.W. She told him of the instances where Gonzales had placed

4

his penis in her mouth and vagina. She said Gonzales put his penis in her vagina "probably three times" and in her mouth "probably more." She said Gonzales asked her if he could put his penis in her butt. L.W. said no.

Regina D'Aquilla, a sexual assault nurse, interviewed and examined L.W. D'Aquilla noticed an injury to L.W.'s hymen consistent with penetration. L.W. recounted that Gonzales placed his penis in her mouth and vagina. She said he did not place his mouth on her vagina and that she rejected his attempt to put his penis in her butt. L.W. told D'Aquilla that she had a vaginal infection for which her mother gave her medication. L.W. thought the infection was due to Gonzales having put his penis in her vagina.

During therapy, L.W. made two stick-figure drawings. One depicts Gonzales putting his penis in her mouth while she is on her knees; the other depicts Gonzales lying on top of her while her brother watches television.

*CSAAS Testimony*

Jody Ward, Ph.D., a clinical and forensic psychologist, testified about Child Sexual Abuse Accommodation Syndrome (CSAAS). She said CSAAS is not used to determine whether a child has been abused, but it is helpful for understanding a child's reaction to abuse. Ward did not speak with anyone or review any evidence relating to the case.

Ward testified it is normal for a child to still want comfort from the abuser and to act loving and trusting toward him, for a child to fail to cry out for help, and for a child to try to forget about the abuse. Commonly a child will not remember each incident or the precise details of each incident.

*Defense*

Gonzales testified in his own defense. He denied committing the alleged acts or having sexual contact with L.W. He said L.W. lied in her interviews and testimony. He offered to provide a DNA sample, but the police would not take it.

DISCUSSION

I

Gonzales contends instructing the jury with CALCRIM No 1191 on uncharged acts improperly allowed L.W. to corroborate her own testimony.

Evidence Code section 1101,[3] subdivision (a) provides, in part: "Except as provided . . . in section[] . . . 1108, . . . evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."

Section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Here Gonzales objected to the admission of uncharged acts of sexual misconduct with L.W. under section 352 as more prejudicial than probative. The trial court overruled the objection. Gonzales does not contend on appeal that the evidence was inadmissible.

The trial court instructed the jury with CALCRIM No. 1191 as follows:

---

[3] All statutory references in section I are to the Evidence Code.

6

"The People presented evidence that the defendant committed the crimes of lewd act with child under the age of 14 [L.W.] that were not charged in this case. These crimes are defined for you in these instructions.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the charged crimes in this case. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged in this case. The People must still prove each charge and allegation beyond a reasonable doubt.

"Do not consider this evidence for any other purpose except for the limited purposes set forth elsewhere in these instructions."

It appears the gravamen of Gonzales's argument is that CALCRIM No. 1191 should be given only where the evidence of uncharged sexual misconduct comes from third parties, and

7

not from the victim-witness herself.  Gonzales's theory is that although testimony about a defendant's uncharged sexual misconduct from a third party makes it more likely the victim's testimony is truthful, similar testimony from the victim herself adds nothing to her credibility.

But the argument relates to the admissibility of the victim's evidence of uncharged misconduct, not the instruction.  Gonzales does not challenge the trial court's ruling admitting the evidence for the purpose stated in CALCRIM No. 1191.  Given that the evidence is admissible for such purpose, CALCRIM No. 1191 correctly instructs the jury.

Gonzales argues that the instruction violates California law.  In *People v. Stanley* (1967) 67 Cal.2d 812, 816-818, our Supreme Court recognized the problem raised by the victim-witness's testimony of uncharged crimes.  The court, however, refused to adopt a rigid rule for the admission or exclusion of such evidence.  Instead, the court said admission should be determined by "'a weighing of the probative value of the evidence offered against the harm it is likely to cause.'"  (*Id.* at p. 818.)  In *People v. Scott* (1978) 21 Cal.3d 284, 297, our Supreme Court reversed a conviction for child molestation and incest on other grounds.  For guidance on retrial, however, the court stated that evidence of uncharged sexual conduct by the testimony of the victim is inadmissible.  In so stating, the court cited *Stanley* without discussion.  (*Ibid.*)

Both *Stanley* and *Scott* were decided prior to the enactment of section 1108, subdivision (a).  (Added by Stats. 1995, ch. 439, § 2.)  Prior to the enactment of section 1108, evidence of the defendant's disposition to commit a sex offense was generally excluded.  (*People v. Reliford* (2003) 29 Cal.4th

8

1007, 1012.) After the enactment of section 1108, courts can no longer exclude such evidence as prejudicial per se, but must engage in a weighing process under section 352. (*Reliford*, at pp. 1012-1013.)

Nothing in section 1108 limits its effect to the testimony of third parties. Instead, the statute allows the admission of evidence of uncharged sexual offenses from any witness subject to section 352. (See *People v. Ennis* (2010) 190 Cal.App.4th 721, 733 [upholding trial court's ruling under section 352 that evidence of uncharged crimes from same witness who testified to charged crimes is admissible].) Here the trial court complied with the statute. CALCRIM No. 1191 is an appropriate instruction.

Gonzales claims CALCRIM No. 1191 violates due process because the inference permitted is irrational. The inference to which Gonzales refers is that testimony by the victim of uncharged sexual offenses corroborates the victim's testimony of the charged sexual offenses.

But there is nothing irrational about a victim supporting her testimony with testimony of uncharged sexual offenses. We agree, however, that such testimony is not as probative as similar testimony from a third party. But it is still probative. (See *People v. Stanley*, *supra*, 67 Cal.2d at p. 818 [court refused to adopt rigid rule excluding such evidence]; *People v. Ennis*, *supra*, 190 Cal.App.4th at p. 733 [upholding trial court's determination such evidence was more probative than unduly prejudicial].) CALCRIM No. 1191 does not violate due process.

Gonzales argues CALCRIM No. 1191 likely resulted in the jury misapplying the burden of proof for the charged offenses. The argument relies on that portion of CALCRIM No.

9

1191 that instructs the jury may consider the uncharged offenses if the People have proved them by a preponderance of the evidence.

But CALCRIM No. 1191 also instructs that the uncharged offenses are only one factor to consider; that they are not sufficient to prove by themselves that the defendant is guilty of the charged offenses; and that the People must still prove the charged offenses beyond a reasonable doubt. (See *People v. Reliford*, *supra*, 29 Cal.4th at pp. 1011-1016 [rejecting a similar challenge to CALJIC No. 2.50.01, an instruction based on section 1108].)

But if it were error to give CALCRIM No. 1191, the error was harmless by any standard. L.W.'s testimony was direct, unflinching and remarkably articulate. In addition, L.W.'s testimony was corroborated by her mother and Ferchand. Her mother testified L.W. slept with her bedroom door open. One night when Gonzales was gone for a long time, L.W.'s mother went to look for him. She found him in L.W.'s bedroom with the door locked. After a delay, Gonzales unlocked the door. Ferchand testified he confronted Gonzales for showering with the children. Gonzales admitted he showered with the children, but claimed he was wearing shorts. Finally the sexual assault exam showed acute injury to L.W.'s hymen.

II

Gonzales contends the misleading language of CALCRIM No. 1193 allowed the CSAAS testimony to be used as proof that L.W. was molested.

The jury was instructed with CALCRIM No. 1193 as follows:

10

"You have heard testimony from Jody Ward, PhD regarding child sexual abuse accommodation syndrome.

"Dr. Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.

"You may consider this evidence only in deciding whether or not [L.W.'s] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

CSAAS expert testimony is not admissible to prove the complaining witness has in fact been sexually abused. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.)  It is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident is inconsistent with her testimony claiming molestation.  (*Ibid.*)  Such testimony is needed to disabuse jurors of commonly held misconceptions of child sexual abuse and the abused child's seemingly self-impeaching behavior.  (*Id.* at p. 1301.)

Gonzales argues the instruction is inconsistent.  It states that the CSAAS testimony is not evidence the defendant committed the charged crimes, and also that the jury may use the evidence in evaluating the believability of L.W.'s testimony.  Gonzales argues it is impossible to use the CSAAS testimony to evaluate the believability of L.W.'s testimony without using it as proof that Gonzales committed the charged crimes.

But the instruction must be understood in the context of Ward's testimony.  Ward testified that CSAAS is not a tool to help diagnose whether a child has actually been abused.  She said that if it is not known whether a child has been abused, CSAAS is not helpful in determining whether a child has, in fact,

11

been abused.  The purpose of CSAAS is to understand a child's reactions when they have been abused.

A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use Ward's testimony to conclude that L.W.'s behavior does not mean she lied when she said she was abused.  The jury also would understand it cannot use Ward's testimony to conclude L.W. was, in fact, molested.  The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior.  Thus, under CALCRIM No. 1193, a juror who believes Ward's testimony will find both that L.W.'s apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested.  There is no conflict in the instruction.

Gonzales argues CALCRIM No. 1193's statement that CSAAS testimony is not evidence he committed "the crimes charged against him" does not preclude the use of CSAAS testimony as proof he committed the uncharged offenses.  The uncharged offenses can lead to the conclusion that Gonzales is inclined to commit sexual offenses.  Gonzales believes the instruction is not only wrong as a matter of law, but denies him due process by lightening the prosecution's burden of proof.

But the only use of evidence of the uncharged offenses is as evidence Gonzales committed the charged offenses.  Thus, use of the CSAAS testimony as evidence Gonzales committed the uncharged offenses would violate the instruction that CSAAS testimony is not evidence he committed the charged offenses.  Moreover, Ward's testimony made it clear CSAAS evidence is not evidence Gonzales did anything charged or

12

uncharged.  CALCRIM No. 1193 was proper and did not violate due process.

In any event, for reasons previously stated, any error in giving CALCRIM No 1193 is harmless.

III

Gonzales contends the trial court erred in imposing fines pursuant to section 290.3 on the counts that had been stayed.  The People concede the error.  Punitive fines cannot be imposed on counts that are stayed pursuant to section 654.  (*People v. Sharret* (2011) 191 Cal.App.4th 859, 865.)  We strike the fines imposed on counts 2, 4 and 6.

The People also concede Gonzales's contention that the trial court erred in ordering him to pay for his public defender.  The court failed to conduct a hearing on Gonzales's ability to pay as required by section 987.8, subdivision (b).  In view of the length of sentence, and to avoid what amounts to an unnecessary use of judicial resources, we do not remand.

DISPOSITION

The fines imposed on counts 2, 4 and 6 pursuant to section 290.3 are stricken.  The order requiring Gonzales to pay attorney fees pursuant to section 987.8 is reversed under the circumstances here.  In all other respects, we affirm.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

13

PERREN, J.

I concur in the result.  I write separately to express my disagreement with the conclusion that CALCRIM No. 1191 was properly given in this case.

There are three categories of "other" sex offenses that may be admitted as evidence of a defendant's propensity to commit charged sex offenses:  (1) uncharged offenses committed against persons other than the victim; (2) uncharged offenses committed against the victim; and (3) other offenses that are charged in the same case.  (Evid. Code, §§ 1101, 1108.)  For the first two categories, the jury is generally instructed that the uncharged offense or offenses may be considered only if they are proven by a preponderance of the evidence.  (CALCRIM No. 1191A; *People v Reliford* (2003) 29 Cal.4th 1007, 1015-1016 [construing CALJIC No. 2.50.01, which is substantially identical to former CALCRIM No. 1191].)  The same was true for the third category until 2012, when our Supreme Court implicitly recognized that charged offenses offered as propensity evidence must be proven beyond a reasonable doubt.  (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1167-1168 (*Villatoro*); *People v. Cruz* (2016) 2 Cal.App.5th 1178, 1186 (*Cruz*); CALCRIM No. 1191B.)  Why?  Because it would be anomalous to tell a jury that in proving one charged offense, it may consider evidence of another charged offense shown by a preponderance of the evidence, despite acquitting of that offense because it was not persuaded of its commission beyond a reasonable doubt.  (*Cruz*, at p. 1186.)

The instant matter presents a similar anomaly.  In the first category, the jury may consider proof by a preponderance of the evidence of other uncharged sex crimes perpetrated on a different victim to "conclude from that evidence that the defendant was

disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit [sex offenses], as charged here." (CALCRIM No. 1191A.) Although the same may generally be true of the second category— in which the jury considers evidence of other offenses perpetrated against the named victim—a problem arises where, as here, the proffered evidence consists solely of the victim's own testimony.

The very point of admitting propensity evidence under Evidence Code section 1108 is "to assure that the trier of fact [will] be made aware of the defendant's other sex offenses *in evaluating the victim's and the defendant's credibility*." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911, italics added.) L.W.'s credibility was the core of the proof establishing Gonzales's guilt. The jury was instructed, however, that it only had to be satisfied by a preponderance of the evidence of L.W.'s veracity to prove the commission of the uncharged offenses in order to prove the charged offenses, even if not satisfied beyond a reasonable doubt of the commission of the uncharged offenses. The jury was specifically told it "may . . . conclude that the defendant was likely to commit *and did* commit" the charged offense, although such a conclusion was but "one factor to consider along with all the other evidence." (CALCRIM No. 1191A, italics added.)

I am mindful that ""[j]urors are presumed to be intelligent, capable of understanding instructions and applying them to the facts of the case."' [Citations.]" (*People v. Carey* (2007) 41 Cal.4th 109, 130.) But the instruction at issue here tested this respected rule. The jurors were invited to consider L.W.'s testimony as to the uncharged offenses—which only had to be proven by a preponderance of the evidence—as corroboration of

her testimony as to the charged offenses, which had to be proven beyond a reasonable doubt.  In other words, the jury was told it could assign a lesser degree of veracity to the victim's testimony regarding the uncharged offenses, and then consider whether that evidence supports a finding of proof beyond a reasonable doubt of her veracity as to the charged offenses.

This exercise in "mental gymnastics" is similar to the one criticized in *Cruz, supra*, 2 Cal.App.5th 1178, in which the jury was instructed on the admissibility of charged offenses as evidence of the defendant's propensity to commit other charged offenses.  In that case, the jury was instructed in accordance with CALJIC No. 2.50.01 that the offenses only had to be proven by a preponderance of the evidence to the extent they were offered to prove propensity.  In finding the instruction was erroneous, the Court of Appeal reasoned: "It would be an exaggeration to say the task required of the jury by the instruction given in this case . . . was logically impossible.  A robot or a computer program could be imagined capable of finding charged offenses true by a preponderance of the evidence, and then finding that this meant the defendant had a propensity to commit such offenses, while still saving for later a decision about whether, in light of all the evidence, the same offenses have been proven beyond a reasonable doubt.  A very fastidious lawyer or judge might even be able to do it.  But it is not reasonable to expect it of lay jurors.  We believe that, for practical purposes, the instruction lowered the standard of proof for the determination of guilt.  In our view, a jury instruction explaining the use of currently charged offenses to show propensity under Evidence Code section 1108 must resemble the instruction used in *Villatoro* in specifying that a currently charged offense must be proved beyond a reasonable

3

doubt before it can be used as propensity evidence in support of another currently charged offense."  (*Cruz*, at p. 1186.)

In my view, a jury instruction explaining the admissibility of uncharged offenses against the victim as proof of propensity under Evidence Code section 1108 must resemble the instruction used in *Villatoro, supra*, 54 Cal.4th 1152 (i.e., CALCRIM No. 1191B) where, as here, the proffered evidence of the uncharged offenses consists solely of the victim's testimony.  L.W. is either credible, or she is not.  Inviting the jury to apply a lesser standard of proof as to her credibility regarding uncharged offenses, and then consider that evidence as proof of her credibility beyond a reasonable doubt as to the charged offenses, confuses the issue and threatens to undermine confidence in the result.

I agree with the majority, however, that Gonzales was not prejudiced by the giving of CALCRIM No. 1191.  Although the instruction was erroneous, it did not "lower[] the standard of proof for the determination of guilt" as the instruction did in *Cruz.*  (*Cruz, supra*, 2 Cal.App.5th at p. 1186.)  Here, the instructions made clear that the charged offenses had to be proven beyond a reasonable doubt.  Moreover, the evidence supporting the charged offenses was substantial.  As the majority observes, L.W.'s testimony bore hallmarks of credibility and was corroborated by both her mother and Ferchand.  Accordingly, the error in giving the instruction was harmless. (*People v. Falsetta, supra*, 21 Cal.4th at p. 925.)

CERTIFIED FOR PUBLICATION.

PERREN, J

4

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.