Filed 12/21/22  P. v. Han CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VINCENT HAN,<br><br>    Defendant and Appellant. | G060949<br><br>(Super. Ct. No. 17WF0851)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

The opinion filed December 9, 2022, is hereby modified in the following particulars:

1.  All references to the victim "Caleigh H." or "Caleigh" are replaced with the initials "C.H."

This modification does not effect a change in the judgment.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

Filed 12/9/22  P. v. Han CA4/3 (unmodified opinion)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060949 |
| v. | (Super. Ct. No. 17WF0851) |
| VINCENT HAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed in part, reversed in part and remanded with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Vincent Han was sentenced to multiple indeterminate life sentences, plus a determinate term of eight years, for sexually abusing his niece. On appeal, he contends: 1) The standard jury instruction on Child Sexual Abuse Accommodation Syndrome (CSAAS) violates due process; 2) his determinate sentence must be reversed in light of two recently enacted laws; and 3) the trial court erred by ordering him to pay a $300 restitution fine. We reverse appellant's determinate sentence and remand for a limited resentencing hearing. In all other respects, we affirm the judgment.

FACTS

Caleigh H., appellant's niece, was 22 years old at the time of trial in 2021. She testified her family trusted appellant and was somewhat beholden to him because he had helped them immigrate to the United States from Vietnam when was she young. In fact, appellant was living with Caleigh's family at their home in Garden Grove when this case arose back in 2009.

At that time, Caleigh's parents worked long hours, so appellant often looked after Caleigh and her younger brother. Once, while Caleigh was taking a shower, appellant entered the shower unannounced and started washing her. Caleigh told appellant she was old enough to wash herself and made it clear she wanted him to stop. However, appellant proceeded to touch her breasts and vagina under the guise of washing her. He also told Caleigh her parents would be very sad if she mentioned anything to them about the incident, so she kept it to herself.

Further abuse ensued. In addition to lewdly touching Caleigh in the shower on two subsequent occasions, appellant started molesting her in other ways. His modus operandi was to corner Caleigh in her bedroom and force her to orally copulate him. Then he would orally copulate and rape her. Caleigh resisted the abuse as best she could, but appellant used his size and strength to impose himself on her. By Caleigh's estimate, he raped and orally copulated her 10-20 times between the ages of 11 and 13.

2

The abuse stopped when Caleigh turned 13, which is when she started having her periods. Around that time, she told one of her girlfriends about appellant's misconduct, but Caleigh did not really understand what appellant had done to her until she was in high school. During her freshman year, she told her boyfriend and her parents about the abuse. However, her parents did not want to get the police involved, so Caleigh reported appellant to a school counselor, who notified the authorities.

Caleigh spoke with appellant on the phone in an attempt to elicit a confession from him. During the call, appellant apologized for his conduct, saying it was stupid and inexcusable. He said he hated himself for what he had done and would do anything to help Caleigh in the future. Appellant reiterated his apology in a subsequent text message to Caleigh. And, he told Caleigh's parents he was very sorry for sexually abusing their daughter on multiple occasions. He also begged them to let the matter go and offered to give Caleigh money and pay for her college tuition.

Appellant was charged in a six-count information with sexually penetrating a child aged 10 or younger (Pen. Code, § 288.7, subd. (b)), committing a lewd act on a child under the age of 14 (*id*., § 288, subd. (a)), two counts of aggravated sexual assault on a child by rape (*id*., § 269, subd. (a)(1)) and two counts of aggravated sexual assault on a child by oral copulation (*id*., subd. (a)(4)).

At trial, the prosecution presented expert testimony on CSAAS from psychologist Martha Rogers. She told the jury CSAAS is a therapeutic tool used by health care professionals to identify and understand the five most common characteristics of child sexual abuse: 1) secrecy; 2) helplessness; 3) accommodation; 4) delayed/vague reporting; and 5) retraction. However, Rogers cautioned these characteristics are not determinative of whether or not a child has been sexually abused. She also admitted she knew nothing about the facts of this case or whether the charges against appellant were true.

3

For his part, appellant presented testimony from several friends and relatives who vouched for his good character. The defense also presented evidence that when Caleigh was first interviewed by the police, she said she was unsure whether she was 10 or 11 years old the first time appellant molested her in the shower. Although Caleigh testified she was 10 years old at the time, defense counsel relied on her interview statement to argue her trial testimony was unreliable and there was insufficient evidence to support the charge of sexually penetrating a child aged 10 or younger. Defense counsel also challenged Caleigh's credibility by pointing out she waited several years before telling any adults about appellant's conduct, and when she finally did so, she did not reveal all the details surrounding the abuse. Nevertheless, the jury convicted appellant as charged and the trial court sentenced him to a de facto term of life in prison without the possibility of parole (83 years).

*CSAAS Instruction*

Appellant contends the trial court violated his due process rights by instructing the jury it could consider the CSAAS evidence in assessing Caleigh's credibility. We disagree.

Pursuant to CALCRIM No. 1193, the trial court instructed the jurors Roger's testimony about CSAAS was not evidence that appellant had committed any of the alleged offenses. Rather, they could only use Roger's testimony for two limited purposes: 1) To decide whether Caleigh's conduct was not inconsistent with the conduct of someone who had been molested; and 2) to evaluate the believability of Caleigh's testimony.

Appellant challenges the last part of the instruction, which allowed the jury to use Roger's testimony to assess Caleigh's credibility. However, in *People v. McAlpin* (1991) 53 Cal.3d 1289 (*McAlpin*), our Supreme Court recognized expert testimony on CSAAS has been found to be "admissible to rehabilitate [a child's] credibility when the defendant suggests that the child's conduct after the incident – e.g., a delay in reporting –

4

is inconsistent with his or her testimony claiming molestation. [Citations.]" (*Id*. at p. 1300, fn. omitted.) Although *McAlpin* dealt with a slightly different issue – it upheld the use of expert testimony to explain why a parent might not immediately report the sexual abuse of his or her child – it recognized CSAAS evidence has its place in child sex abuse trials. Such evidence may not be admitted to prove the defendant committed the alleged acts of abuse. (*Ibid*.) But it can be helpful "'to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' [Citation.]" (*Id.* at p. 1301.)

In other words, as we recently explained in *People v. Lapenias* (2021) 67 Cal.App.5th 162, 171, CSAAS evidence is not only relevant to show the victim's behavior is not inconsistent with having been molested, it is also relevant for purposes of evaluating the victim's credibility, which is what CALCRIM No. 1193 conveyed to the jury in this case. While appellant contends *People v. Housley* (1992) 6 Cal.App.4th 947 and *People v. Bowker* (1988) 203 Cal.App.3d 385 limit the admissibility of CSAAS testimony to the former purpose, both those cases recognized CSAAS evidence may be admitted to rehabilitate the credibility of an alleged victim of child sexual abuse. (*People v. Housley, supra,* 6 Cal.App.4th at p. 956; *People v. Bowker, supra,* 203 Cal.App.3d at pp. 387, 393-394.) If anything, they support our conclusion.

In attacking CALCRIM No. 1193, appellant claims allowing the jury to consider CSAAS evidence to evaluate the victim's credibility is tantamount to allowing the jury to consider the evidence as supporting the truth of the underlying charges. Appellant asserts it is "almost certain" jurors will misuse CALCRIM No. 1193 to go beyond the issue of credibility and use CSAAS evidence as proof of the defendant's guilt, even though the instruction expressly prohibits this.

This claim runs counter to the well-established rule that jurors are presumed to understand and follow the instructions they are given. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139 [describing this rule as "'[t]he crucial assumption underlying

5

our constitutional system of trial by jury'"].) Appellant's argument also overlooks the primary reason CSAAS evidence is admissible in criminal trials: "The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 504; accord, *People v. Munch* (2020) 52 Cal.App.5th 464, 474.)

That sums it up well. In this case, appellant attacked Caleigh's credibility on cross-examination and during closing argument by pointing out that some of her pretrial statements to the police were inconsistent with her trial testimony and that her reporting of appellant's alleged misconduct was both delayed and vague. However, Rogers' testimony on CSAAS pointed out that child sex victims often have a difficult time remembering the details of their abuse and delay reporting it. Per CALCRIM No. 1193, the jury was fully entitled to consider this evidence to rebut appellant's suggestion that Caleigh's testimony was not credible and that her behavior was inconsistent with someone who had been molested. Considering as well that CALCRIM No. 1193 expressly informed the jury the CSAAS evidence was not proof of appellant's guilt, we conclude the instruction did not violate due process or infringe appellant's right to a fair trial.

Even if CALCRIM No. 1193 were flawed to the extent it allowed the jury to consider Roger's testimony in evaluating Caleigh's credibility, we would conclude the

error was surely harmless in light of what appellant told Caleigh and her parents after she reported him to the police. Not only did he say he was extremely sorry for molesting Caleigh, he promised to do everything in his power to make it up to her. His repeated statements to that effect did much more to rehabilitate Caleigh's credibility and bolster the prosecution's case than anything Rogers said at trial. Any error in the wording of CALCRIM No. 1193 was harmless under any standard of review.

*New Sentencing Statutes*

Appellant mounts a limited challenge to the trial court's sentencing decision. As to the lewd conduct count, for which he received the upper term of eight years, he contends he is entitled to resentencing in light of two new laws that became effective on January 1, 2022, less than a month after he was sentenced. We agree.

In imposing sentence, the judge found there were five aggravating circumstances attendant to appellant's crimes: 1) They reflected planning and sophistication; 2) They were violent, cruel and callous; 3) Caleigh was particularly vulnerable; 4) appellant took advantage of her trust in him; and 5) he tried to dissuade her from reporting his misconduct. The court did not find any mitigating circumstances present.

Thus, on the lewd conduct count, the judge sentenced appellant to the upper term of eight years in prison. And on the remaining five counts, the judge imposed indeterminate consecutive terms of 15 years to life, bringing appellant's aggregate term to 83-years-to-life in prison.

Appellant does not dispute the consecutive indeterminate life terms, which were mandatory. But he does challenge the trial court's discretionary decision to impose the upper term on the lewd conduct count, which was based on his touching Caleigh's vagina in the shower. He contends that decision is suspect in light of two new laws, Assembly Bill No. 124 (AB 124) (which generally requires trial courts to impose the lower term for a criminal offense if the defendant's "psychological, physical, or

7

childhood trauma" contributed to the commission of the crime.) (Pen. Code, § 1170, subd. (b)(6)(A), as amended by Stats. 2021, ch. 695, §§ 5-6) and Senate Bill No. 567 (SB 567), which mandates imposition of the middle term unless the facts supporting imposition of the upper term have been stipulated to by the defendant or have been found true beyond a reasonable doubt by the judge or jury. (Pen. Code, § 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.)

The Attorney General concedes appellant is entitled to the benefit of these new laws. (See *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095 [AB 124 applies retroactively on direct appeal to all nonfinal judgments]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039 [same re SB 567].) However, he contends reversal is not required because the trial court would not have imposed a lighter sentence on the lewd conduct count even if those laws had been in effect at the time of sentencing. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [in appeals involving new sentencing rules, the proper disposition is to reverse and remand unless the record clearly shows the defendant would not have benefited from application of those rules].) We do not share his certainty.

With respect to AB 124, the probation report indicates appellant suffered considerable psychological and physical trauma while escaping his native Vietnam at the age of 14. After being adrift at sea in a crowded boat for several days, he ended up on a deserted island in Indonesia, where he had to forage for food and sleep outdoors. He also had a near-fatal bout with malaria before eventually being rescued and taken to the United States. However, these events were not discussed at the sentencing hearing, presumably because AB 124 was not in effect at that time.

As for the five aggravating circumstances cited by the trial court, none of them were stipulated to or found to be true beyond a reasonable doubt, as required under SB 567. While there is no question appellant subjected Caleigh to severe sexual abuse, we cannot be sure a trier of fact would have been convinced beyond a reasonable doubt

8

that the aggravating factors the trial court relied on actually applied in this case. Nor can we be certain the trial court would have concluded any such factors justified imposition of the upper term in light of the presumption for the middle term set forth in SB 567.

Although the courts are split as to the precise standard of review applicable to assessing harmless error when that presumption has not been applied (see *People v. Dunn* (2022) 81 Cal.App.5th 394, 408–409, rev. granted Oct. 12, 2022, S275655; *People v. Lopez* (2022) 78 Cal.App.5th 459, 467, fn. 11; *People v. Flores* (2022) 75 Cal.App.5th 495, 500), reversal is clearly called for in this case. The strength of the evidence on the aggravating factors here is disputable, and the record points to potential mitigation due to appellant's childhood trauma. That doesn't mean a middle or lower term is compelled on the lewd act count. All we are saying is that the record does not clearly show that resentencing on that count would be a futile act. Therefore, we reverse appellant's sentence for that crime and order the trial court to resentence him on that count.

In reaching this conclusion, we recognize that because appellant's sentence on the remaining counts is indisputably correct, the best he could hope for on remand would be a reduction in his overall sentence from 83 to 78 years to life in prison, which would not impact his sentence from a practical perspective. However, "even a very long reduced sentence may someday be further reduced through other avenues of postconviction relief or retroactive legislative changes. A remand for resentencing is not an idle act just because a defendant may not derive a present practical benefit should the trial court exercise its discretion in the defendant's favor." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 427.)

*Restitution Fine*

Lastly, appellant contends the trial court abused its discretion and violated his due process rights by ordering him to pay the minimum restitution fine of $300 pursuant to Penal Code section 1202.4. Appellant argues the fine is fundamentally unfair because the court waived other sentencing fines, such as the $500 sex offender fine. But

9

the defendant's ability to pay is not a factor in imposing the minimum restitution fine under section 1202.4. (Pen. Code, § 1202.4, subd. (c).) And besides, the record shows appellant was making $17,000 a month as a chiropractor when this case arose. So even though the trial court took pity on him with respect to some fines and fees, its decision to impose the minimum restitution fine was not an abuse of discretion or a violation of due process. (Compare *People v. Duenas* (2019) 30 Cal.App.5th 1157 [imposing unpayable fines on an indigent defendant violates due process].)

DISPOSITION

Appellant's sentence on count 2 for committing a lewd act on a child under the age of 14 is reversed. The matter is remanded for a limited resentencing hearing at which the trial court shall apply AB 124 and SB 567 in imposing sentence on that count. In all other respects, the judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

10