Filed 9/3/25  P. v. Belen CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ELDERJAIRUS STOTOMAS BELEN, Defendant and Appellant. | 2d Crim. No. B335979 (Super. Ct. No. 20F-02249) (San Luis Obispo County) |

A jury found Elderjairus Stotomas Belen guilty of one count of sexual intercourse with a child under 10 years of age (Pen. Code, § 288.7, subd. (a)) count 1 (Victim L.); two counts of sexual penetration of a child under the age of 10 years of age (*id.*, subd. (b)) counts 2 and 3 (Victim J.); and eight counts of lewd or lascivious acts on a child under 14 years old (*id.*, § 288, subd. (a)) counts 4-11.  As to counts 4 through 11, it was further alleged that the victim was under the age of 14 years old and that there were multiple victims.  (*Id.*, § 667.61, subds. (j)(2) & (e).)  The

jury found aggravating factors under California Rules of Court, rules 4.421(a)(1)-(12) and 4.421(b)(1).

The trial court sentenced Belen to an aggregate term of 80 years to life in state prison as follows: 1) two consecutive terms of 25 years to life as to counts 1 and 4; 2) two consecutive terms of 15 years to life as to counts 2 and 3; and 3) seven concurrent terms of 25 years as to counts 5-11. We affirm.

## FACTS

The issues raised in this appeal do not require that we state the facts in detail. A brief summary will suffice.

Belen lived in a five-bedroom house with Victim J., a minor child, and Victim J.'s mother. They all occupied one bedroom in the house. Other bedrooms in the house were occupied by Victim J.'s relatives, including Victim J.'s cousin, Victim L., also a minor child.

### *Victim L.*

In June 2013, when Victim L. was five years old, Belen began sexually molesting her. The molestation began at a rate of once a month, then twice a week, then every day. He would touch her breasts and vagina and put his fingers in her vagina. The molestations included rape when Victim L. was seven years old. They continued for approximately five years. Victim L. moved out of the house in February 2018.

In December 2016, Victim L. complained to her aunt that Belen was always touching her and tickling her, and she wanted him out of the house. In March or May 2019, Victim L. told her friends about what Belen had done to her. Victim L. did not tell her parents until after she told her friends. In May 2019, the police conducted a forensic interview with Victim L. Victim L.

2

was then 11 years old.  She told the interviewer that Belen had molested and raped her.

*Victim J.*

Victim J. testified that she lived in the house with Belen from the time she was in kindergarten in 2015, until at least the second grade.  One time, she saw Belen on top of Victim L., trying to remove an article of clothing.  Victim L. told him to stop, but he continued.  Eventually Belen gave up and let her go.

In May 2019, when Victim J. was seven years old, the police conducted a forensic interview with Victim J.  She reported seeing Belen and Victim L. on the floor.  Victim L. was struggling to get away and told Belen to stop.  Victim L. looked scared and it scared Victim J.  Victim J. denied Belen did anything like that to her or made her touch any part of him.

But in testifying at trial, Victim J. said that Belen would help her shower and that he showered with her one to three times a week.  Belen would touch her breasts, waist, and vagina, and put his finger in her vagina.  This continued for two or three years until he moved out.

*CSAAS Testimony*

Blake Carmichael is a clinical psychologist specializing in child abuse.  He testified about Child Sexual Abuse Accommodation Syndrome (CSAAS).  Carmichael said he did not know any of the facts of this case.

Carmichael testified that some children may not react to being sexually abused as some people might think.  Some children do not appear to be outwardly affected.  Children are often abused by someone they know, trust, or love, someone they have ongoing contact with.  This puts the child in a vulnerable position.  CSAAS has five aspects:

3

1) Secrecy: A child might be told there will be negative consequences if the child tells anyone about the abuse or the child might draw that conclusion even without being told.

2) Helplessness: There is a power difference between the abuser and the child.  The perpetrator might be an important person in the family or community.

3) Entrapment and accommodation: A child might feel entrapped in the sexual abuse component of the relationship and cope with the abuse in a way that is ineffectual to stop it.  Children usually do not bite or scream.  They may freeze and just let it happen.

4) Delayed, unconvincing, or conflicted disclosure: Disclosure is a process.  Children will not tell everything the first time they talk about sexual abuse.  A child might feel embarrassed and let an opportunity to disclose the abuse pass.  Some children will deny the abuse occurred even when directly asked about it.  Some children may not realize they have been sexually abused until they get older.

5) Recanting or retraction: A significant number of children will recant or retract the accusation of sexual abuse.

Carmichael told the jury that it is not appropriate to use CSAAS to conclude that a child has been abused.  CSAAS only shows that certain behaviors of children are not inconsistent with abuse.

*Defense*

Deborah Davis, a professor of psychology at the University of Nevada, testified about why people may make false reports.  They may be deliberately lying, subjected to social influence, see others benefit from false claims, or they may be subject to family

4

pressures, such as wanting someone out of the house.  Davis stated she never met with the victims of this case.

DISCUSSION

*CSAAS Evidence* and *CALCRIM No. 1193*

(a) Admissibility of CSAAS Evidence

Belen contends that CSAAS evidence was irrelevant and prejudicial.

Belen argues that CSAAS evidence was not relevant to the facts of this case.  But CSAAS evidence was relevant to explain why the children delayed in reporting the abuse and why Victim J. initially denied having been abused.

Belen argues that CSAAS evidence is irrelevant because there are no longer misconceptions to correct.  We rejected that argument in *People v. Munch* (2020) 52 Cal.App.5th 464, 468.  Our Supreme Court approved the use of CSAAS evidence in *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301.  We are bound by that decision.  (*Auto Equity Sales. Inc. v. Superior Court* (1963) 57 Cal.2d 450, 455.)

Belen argues that CSAAS evidence does not satisfy the requirements of *Kelly*/*Frye*.[1]  We also rejected that argument in *People v. Munch*, *supra*, 52 Cal.App.5th at pages 472-473.  *Kelly*/*Frye* applies to new scientific evidence, the reliability of which has not been previously accepted in court.  The reliability of CSAAS evidence has been accepted in court for over 30 years.  (See *People v. McAlpin, supra,* 53 Cal.3d at pp. 1300-1301.)

---

[1] "Formerly known as the *Kelly-Frye* rule, based on the rulings of *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*) and *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, the rule is now the *Kelly* rule in California after changes to the Federal Rules of Evidence that superseded *Frye*." (*People v. Nieves* (2021) 11 Cal.5th 404, 442, fn. 8.)

5

(b) CALCRIM No. 1193

Belen contends that CALCRIM No. 1193 lessens the prosecution's burden of proof by permitting the jury to use CSAAS evidence to evaluate the credibility of the victim's testimony.

The jury was instructed with CALCRIM No. 1193 as follows:

"You have heard the testimony of Dr. Blake Carmichael regarding Child Sexual Abuse Accommodation Syndrome. Child Sexual Abuse Accommodation Syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of the alleged victim of child sexual abuse. Dr. Carmichael's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him or any of the conduct or crimes with which he was not charged. You may consider this evidence only in deciding whether or not [Victim L.'s] and [Victim J.'s] conduct was consistent with the conduct of someone who has been molested and in evaluating–and in evaluating the believability of their testimony."

We also previously rejected Belen's argument. (*People v. Munch, supra*, 52 Cal.App.5th at pp. 473-474; *People v. Gonzalez* (2017) 16 Cal.App.5th 494, 504.) Under CALCRIM No. 1193, a juror who believes the CSAAS evidence will find both that the child's apparently self-impeaching behavior does not affect her credibility one way or the other and that the CSAAS evidence does not show that the child has been molested. (*Munch*, at p. 474; *Gonzales*, at p. 504.) CALCRIM No. 1193 does not instruct the jury that it should believe the child.

Belen contends that CALCRIM No. 1193's predecessor, CALJIC No. 10.64, contained "guardrails" that the current instruction lacks. But CALCRIM No. 1193 has all the "guardrails" it needs. It accurately describes the proper use and limitations of CSAAS evidence. CALCRIM No. 1193 has been consistently held to be proper by many courts, including this one.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

7

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

———————————————

     Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

     Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.