Filed 9/30/25  P. v. Villatoro CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>YURI ABDEL VILLATORO,<br><br>　　Defendant and Appellant. | G063595<br><br>(Super. Ct. No. 18HF1715)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

Defendant Yuri Abdel Villatoro appeals following his conviction on seven counts related to the sexual abuse of two girls. On appeal, Villatoro's sole argument is that CALCRIM No. 1193, the pattern jury instruction, is legally invalid. He contends the instruction improperly allowed the jury to use evidence of Child Sexual Abuse Accommodation Syndrome (CSAAS) to determine the victim was telling the truth, and that by extension, he was guilty. He also asserts the instruction permits jurors to conclude the victim's behavior was "consistent with" abuse, rather than "'not inconsistent with'" abuse, reflecting a 2022 change to the instruction. Reaching the same conclusion as many courts before us, we find CALCRIM No. 1193 valid and unproblematic. We affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Because of the limited nature of the issues on appeal, we review the facts only briefly. The two victims, W.E. and K.E., were sisters. They and their family lived with Villatoro as a roommate for approximately four years, starting around 2011. At the time, W.E. was four years old and K.E. was eight months old. Villatoro rented one of the bedrooms in their apartment. After he moved out, he returned to visit.

At times, W.E. and K.E. were alone in the apartment with Villatoro while their mother went shopping. On other occasions, the children would go into Villatoro's room to watch television or movies with him.

Villatoro began molesting W.E. when she was five or six years old, and he continued to molest her until she reported the abuse at about 11 years of age. The abuse consisted of repeated acts of oral copulation, digital penetration, and placing his penis outside her vagina. With regard to K.E., he touched her vagina and kissed her on the mouth with his tongue when she was in kindergarten or first grade.

2

The sisters reported the abuse to a social worker at school in 2018. Thereafter, both participated in forensic interviews that were later played for the jury. At the time of trial in 2023, W.E. was 16 years old and K.E. was 12 years old.

Villatoro was charged with seven counts. Counts one through three and count seven alleged lewd acts on a child under 14 years old. (Pen. Code, § 288, subd. (a).)[1] Counts four and five alleged oral copulation with a child 10 years or younger. (§ 288.7, subd. (b).) Count six alleged digital sexual penetration of a child 10 years or younger. (§ 288.7, subd. (b).) As to counts one, two, three, and seven, it was further alleged that Villatoro committed an offense specified in section § 667.61, subdivision (a) against more than one victim under 14 (§ 667.61, subds. (e)(4), (j)(2).) Aggravating circumstances were further alleged as to counts one, two, three and seven, specifically, that the victims were particularly vulnerable and that Villatoro took advantage of a position of trust to commit the crimes. (Cal. Rules of Court, rule 4.421(a)(3), (a)(11).)

During trial, Dr. Martha Rogers, a clinical psychologist, testified about CSAAS. CSAAS was described in 1983 by a UCLA psychiatrist named Roland Summit, who had seen hundreds of children in cases involving alleged molestation. In a paper, he identified CSAAS and described some of the common features seen in children who may have been victims of sexual abuse.

With regard to Summit's work, Rogers also testified he had written a second paper stating that his first had been misinterpreted, and that using the common features he had identified to determine whether

---

[1] Subsequent statutory references are to the Penal Code.

molestation existed was inappropriate. He believed the features he identified were more of a common pattern than a syndrome.

The pattern had five components or points. The points were "secrecy, helplessness, entrapment/accommodation, delayed unconvincing disclosure, and recanting." Secrecy, helplessness, and recanting were used in the common meaning of those terms. Entrapment/accommodation described behavior where children felt they had no choice in the abuse and could not do anything about it. Delayed unconvincing disclosure consisted of the very common phenomenon where children did not disclose the abuse—up to half did not disclose within five years. At times, a child would test the waters and disclose in part, waiting to see the reactions of those told. Disclosures could be partial or otherwise unconvincing, and therefore disregarded.

Rogers stated that there could be cases where none of the points were present and abuse had occurred, and cases where all were present and no abuse occurred. She could not testify as to whether the crimes alleged in the instant case had been committed.

At the conclusion of trial, the jury found Villatoro guilty on all counts and found the multiple victim allegation true. The prosecution dismissed the aggravating circumstances.

The court sentenced Villatoro to an aggregate indeterminate term of 145 years to life in state prison. Villatoro now appeals.

# DISCUSSION

## I.

### RELEVANT LAW AND STANDARD OF REVIEW

The only issue Villatoro raises on appeal is the propriety of the CSAAS instruction.

"Trial courts may admit CSAAS evidence to disabuse jurors of five commonly held 'myths' or misconceptions about child sexual abuse." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*).) These myths or misconceptions, described by Rogers in her testimony, were secrecy, helplessness, entrapment/accommodation, delayed unconvincing disclosure, and recanting. (See *id.* at pp. 172–173.)

CSAAS testimony is only admissible for the limited purpose of explaining why a victim may have acted as she did after the molestation, for example, keeping the molestation secret for years. It is not admissible to establish guilt. CSAAS evidence is admissible because it is relevant to the victim's credibility. (*Lapenias, supra,* 67 Cal.App.5th at p. 173.)

The pattern instruction, CALCRIM No. 1193, reads as follows: "You have heard testimony from *<insert name of expert>* regarding child sexual abuse accommodation syndrome.

"Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse.

"_____'s *<insert name of expert>* testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against (him/her) [or any conduct or crime[s] with which (he/she) was not charged].

5

"You may consider this evidence only in deciding whether or not _____'s *<insert name of alleged victim of abuse>* conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

The court followed the pattern instruction in this case. "'You have heard testimony from Dr. Martha Rogers regarding Child Sexual Abuse Accommodation Syndrome.

"'Child Sexual Abuse Accommodation Syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse.

"'Dr. Rogers's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him.

"'You may consider this evidence only in deciding whether or not [W.E.]'s and/or [K.E.]'s conduct was consistent with the conduct of someone who has been molested and in evaluating the believability of an alleged victim.'"

Multiple courts have upheld the language of CALCRIM No. 1193, finding the instruction accurately states the limited purpose of CSAAS evidence. (*Lapenias, supra,* 67 Cal.App.5th at pp. 175–176; *People v. Munch* (2020) 52 Cal.App.5th 464, 473–474; *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503–504.) Villatoro argues these cases were wrongly decided.

"'We review a claim of instructional error de novo. [Citation.] The challenged instruction is considered "in the context of the instructions as a whole and the trial record to determine whether there is a reasonable

6

likelihood the jury applied the instruction in an impermissible manner.'" [Citation.] 'We of course presume "that jurors understand and follow the court's instructions.""" (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 815–816.)

II.

## THE LANGUAGE OF CALCRIM NO. 1193 DOES NOT ALLOW THE JURY TO DETERMINE GUILT BASED ON CSAAS EVIDENCE

Villatoro's argument is that because the instruction allowed the jury to use CSAAS evidence to help them decide whether the victims were telling the truth, that necessarily allowed them to use the evidence to find that he was guilty. This is not substantively different from previously rejected arguments that CALCRIM No. 1193 lowered the burden of proof.[2] (See *People v. Munch, supra,* 52 Cal.App.5th at p. 474 [the instruction does not reduce the prosecution's burden of proof or misstate the law]; *People v. Ortiz, supra,* 96 Cal.App.5th at p. 816 [the defendant's constitutional rights were not violated by instructing the jury with CALCRIM No. 1193]; *Lapenias, supra,* 67 Cal.App.5th at pp. 175–176 [CALCRIM No. 1193 accurately informs the jury on the proper use and the limitations on the use of CSAAS evidence]; *People v. Gonzales, supra,* 16 Cal.App.5th at pp. 503–504 [rejecting the defendant's argument that it was "impossible to use the CSAAS testimony to evaluate the believability of [the victim's] testimony without using it as proof that [the defendant] committed the charged crimes"].)

We disagree that these cases were wrongly decided. Villatoro often refers to *People v. Housley* (1992) 6 Cal.App.4th 947, but CALCRIM No.

---

[2] Although Villatoro describes CALCRIM No. 1193 as "recently modified," the most recent substantive changes were made in 2022.

7

1193 addresses the concerns raised in that case. The instruction was crafted to clarify the limited purpose of expert testimony regarding victim behavior. The instruction does not direct the jury to believe the victim, as Villatoro suggests. It provides guidance on how to consider expert testimony regarding the behavior of victims in child sexual abuse cases. The instruction clarifies that such testimony cannot be used as evidence of the defendant's guilt. Instead, the evidence can only be used to help the jury understand the victim's behavior, which might otherwise seem counterintuitive. (See *Gonzales*, *supra*, 16 Cal.App.5th at p. 504.) This distinction ensures that the jury evaluates CSAAS evidence within the proper context. We find no merit in Villatoro's argument.

III.

### THE CURRENT VERSION OF THE INSTRUCTION IS VALID

Villatoro next complains of the following language in the court's instruction: "'You may consider this evidence only in deciding whether or not [W.E.]'s and/or [K.E.]'s conduct *was consistent with* the conduct of someone who has been molested . . . .'" (Italics added.) Villatoro argues prior case law has held that CSAAS evidence is admissible only to establish the victim's behavior is "'not inconsistent with'" instead of "'consistent with the conduct of someone who has been molested.'" But Villatoro relies on cases under the former version of the instruction, which used the "'not inconsistent with'" language. Cases are not authority for propositions they did not consider. (*McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611; *People v. Rusconi* (2015) 236 Cal.App.4th 273, 280.)

The Advisory Committee on Criminal Jury Instructions recommended changing the language to its current form to remove the double negative "'not inconsistent with'" because it had been challenged as

8

"potentially misleading." (Jud. Council of Cal., Rep. to the Jud. Council, Jury Instns: Crim. Jury Instns. (2022 Supplement) p. 4, at <https://jcc.legistar.com/View.ashx?M=F&ID=11203920&GUID=D4F27BE4-30E6-4A0B-996B-6CF806041570> [as of Sept. 29, 2025] archived at <https://perma.cc/3FLM-LUTB>.) The change was subsequently adopted.

While Villatoro argues this is a substantive change, we disagree. "Consistent with," means the evidence tends to support a proposition, while "'not inconsistent with'" means the evidence does not disprove it. The current version instructs the jury that they may consider the CSAAS evidence in deciding whether the victims' conduct tended to be consistent with someone who had been molested. The former version instructed the CSAAS evidence did not disprove they were molested. This was a minor semantic difference, although we agree the current version is easier to understand and less confusing. Neither the current nor the former language allowed the jury to infer guilt based on the presence of CSAAS factors. Accordingly, there is no basis for Villatoro's claim that this change rendered the instruction legally erroneous.

Because we find no error, we need not consider Villatoro's due process argument.

9

## DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


BANCROFT, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.