Filed 5/24/24  P. v. Perdomo CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JUAN C. CARPIO PERDOMO,<br><br>        Defendant and Appellant. | A168231<br><br>(Alameda County<br>Super. Ct. No. 20CR002654) |

A jury convicted Juan C. Carpio Perdomo (Carpio)[1] of three counts of lewd acts upon a child, A. Doe, under Penal Code section 288, subdivision (a).[2]  The trial court sentenced Carpio to 8 years in prison and imposed a restitution fine of $7,200.  Carpio contends the trial court erred by giving jury instruction CALCRIM No. 1193.  Carpio further contends the court imposed a restitution fine of $7,200 in the mistaken belief that amount was the minimum it could impose.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Carpio started dating his girlfriend, known as "Neung." Neung worked as a live-in nanny for a married couple, caring for their

---

[1]     We refer to appellant as Carpio as that is his preference.

[2]     All further statutory references are to the Penal Code.

daughter. Neung continued working for the family for several years, including after their second child, A., was born in 2006. Neung and Carpio grew close with the family and Carpio became A.'s godfather. In 2019, when A. was 13 years old, A. disclosed to his family that Carpio had sexually abused him when he was 6 years old. A.'s family then filed a police report.

In 2022, the district attorney filed an amended information charging Carpio with three counts of lewd or lascivious act on a child under the age of 14 (§ 288, subd. (a)). The information further alleged that Carpio took advantage of a position of trust or confidence to commit the offenses (Cal. Rules of Court, rule 4.421(a)(11)) and that the victim was "particularly vulnerable" (Cal. Rules of Court, rule 4.421(a)(3)). A jury trial took place in May 2022.

*Prosecution's Case*

The prosecution proffered the testimony of several witnesses, including A., A.'s parents, and Dr. Blake Carmichael, an expert in child sexual abuse accommodation syndrome (CSAAS). We briefly summarize their testimony here, only as relevant to this appeal.

A. testified that one night when he was between the ages of six and eight, Carpio went into A.'s bedroom and got into bed with him. A. knew he was around those ages because of the pajamas he was wearing and the bed he had at the time. Carpio pulled his pants down, exposing his penis, then placed his penis on A.'s leg and rubbed it back and forth. He grabbed A.'s wrist and moved his hand onto Carpio's penis, forcing A.'s hand up and down until Carpio ejaculated on A.'s body. A. went to the bathroom to try to clean it off, but some of the residue and smell remained, which bothered him.

A. returned to his room and saw Carpio fully dressed. A. got back into bed, and Carpio got into bed with him. Carpio again undressed and forced

A.'s hand back and forth on Carpio's penis. Carpio also pulled A.'s pants down and touched A.'s penis. Carpio again ejaculated on A., after which point Neung came in the room, startling Carpio and leading him to quickly pull up his pants. Carpio then got dressed and told A. not to tell people what happened.

Although A. had been confused at the time of the incident, he did not realize it was "not okay" until he took sexual education in middle school. A. ultimately disclosed the abuse to his family on a road trip when he was 13 years old after hearing a podcast story about sexual abuse.

On cross-examination, the defense sought to impeach A.'s credibility, including by questioning why he did not disclose the sexual abuse at an earlier age and highlighting inconsistencies in his accounts of the abuse over time.

One of A.'s parents testified that, when A. was between the ages of five and eight, she and the other parent noticed he became resistant to going to bed and did not want to put on his pajamas. In that period of time, A. would frequently wake up screaming. One night, they found a kitchen knife under A.'s bed, which he said he needed " 'for when bad guys come in,' " and they sometimes found other knives under his bed or pillow. She also described the family road trip when A. disclosed the sexual abuse after hearing a radio show about a woman who had been sexually abused as a child. On a subsequent occasion, A. became upset by the smell of semen; he began to cry and said it reminded him of what Carpio had done to him. A.'s other parent offered testimony consistent with the above-described events.

*CSAAS Testimony*

Dr. Blake Carmichael, the CSAAS expert, had not reviewed any information about this case and had never met with A. He testified only to

3

explain CSAAS, an educational tool used to help understand the dynamics and misconceptions of child sexual abuse and the way children may react to and report such abuse. CSAAS is not a diagnostic tool to determine whether a child was abused.

Dr. Carmichael discussed in detail the five principles of CSAAS: secrecy; helplessness; entrapment or accommodation; delayed, unconvincing, or conflicted disclosure; and retraction. He testified there is often a loving relationship between an abuser and a victim, and it is normal for a child to delay reporting the abuse for months or years, with even longer delays seen in male victims. Children who were abused at an early age can experience a change in perspective as they get older and learn about romance and sex, informing their reflections on what happened when they were younger. It is typical for a child to provide inconsistent or even conflicting details of the abuse.

*Defense Case*

Carpio testified on his own behalf. He never helped Neung put the children to bed. He did not understand why he had been arrested or accused of these offenses, which he denied committing. He never touched A. with his clothes off, exposed his penis to A., or climbed into A.'s bed.

Dr. Andrea Shelley testified that she had evaluated Carpio and opined he did not have non-typical sexual interests, including an interest in children.

*CALCRIM No. 1193 Instruction*

At the request of *both* parties, the court instructed the jury with CALCRIM No. 1193 as follows: "You have heard testimony from Blake Carmichael regarding child sexual abuse accommodation syndrome. Blake Carmichael's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against

4

him. You may consider this evidence only in deciding whether or not [A.]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of his testimony." The standard CALCRIM No. 1193 instruction in effect at the time of trial was not modified in any way.[3]

*Verdict and Sentencing*

The jury returned a guilty verdict on all three counts. The trial court also found true that Carpio took advantage of a position of trust or confidence and that A. was particularly vulnerable. Probation recommended that probation be denied and that the court impose a restitution fine of $10,000.

At sentencing, the court found Carpio was ineligible for probation under section 1203.066 and sentenced Carpio to a total of eight years in prison, noting the seriousness of the crime and the repercussions it caused for A. and his family. The court found Carpio had the ability to pay fines and fees. It imposed a $7,200 restitution fine, calculating the amount as follows: "There's a restitution fund fine under 1202.4(b)(1) in the amount of $7200, which is the minimum. $300 times 8 times 3." The court imposed, but stayed, a parole revocation fine of $7,200 under section 1202.45. Carpio appealed.

## DISCUSSION

## I. The Court Did Not Err in Providing CALCRIM No. 1193

Carpio contends the trial court erred by instructing the jury with the portion of CALCRIM No. 1193 that provided the jury could consider Dr. Carmichael's testimony "in evaluating the believability of [A.'s] testimony." He asserts this language allowed the jury to misuse the testimony to bolster

---

[3] The instruction was revised in September 2022. The two versions are nearly identical for purposes of this appeal.

A.'s credibility, which "tipped the scales" in favor of the prosecution and lightened its burden of proof, in violation of his right to due process. We are not persuaded.

As an initial matter, Carpio acknowledges he requested the CALCRIM No. 1193 instruction below but asserts he did not forfeit this claim as the alleged error affected his substantial rights. (§ 1259.) The Attorney General argues the claim is forfeited and meritless. However, "[w]e need not decide whether forfeiture applies in this case because the trial court did not err in giving CALCRIM No. 1193." (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 219 (*Ramirez*).)

It is a longstanding principle that CSAAS evidence "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.)

However, and contrary to Carpio's assertion, CALCRIM No. 1193 does not result in a misuse of CSAAS evidence, particularly when viewed in the context of Dr. Carmichael's testimony that CSAAS is an educational tool used to understand a child's reactions to abuse, not a diagnostic tool to determine whether a child was, in fact, abused. (See *Ramirez*, *supra*, 98 Cal.App.5th at pp. 219–220.) Indeed, as Carpio concedes, numerous courts have rejected similar challenges to the instruction as the ones raised here. (See, e.g., *id.* at 220 [instruction does not violate defendant's right to due process]; *People v. Lapenias* (2021) 67 Cal.App.5th 162, 175–176 [instruction accurately instructs the jury on proper use and limitations of CSAAS evidence]; *People v. Gonzales* (2017) 16 Cal.App.5th 494, 504 [instruction does not lighten

6

prosecution's burden of proof or violate due process].)  We join those courts in concluding the CALCRIM No. 1193 instruction was proper and did not violate Carpio's right to due process.

Further, any error in giving the portion of the instruction challenged by Carpio would not rise to the level of reversible error.  (See *Ramirez*, *supra*, 98 Cal.App.5th at p. 220.)  The challenged portion of the instruction was preceded by the court's statement that Dr. Carmichael's testimony was not to be used as evidence that Carpio committed the offenses.  The court also instructed the jury as to the prosecution's burden of proof; witness credibility evaluation; and to consider evidence that was admitted for a limited purpose only for that purpose.  It is not reasonably likely the jury misunderstood these instructions as a whole.  (See *People v. Castillo* (1997) 16 Cal.4th 1009, 1016–1017.)  And, in light of the significant inculpatory evidence admitted at trial, including A.'s detailed testimony of the sexual abuse and his parents' corroborating accounts, we conclude Carpio "would have been convicted of the same offenses regardless of any alleged error in the instruction."  (See *Ramirez*, at p. 220.)

## II.  The Court Did Not Err in Imposing the Restitution Fine

Carpio argues the trial court's imposition of a $7,200 restitution fine was premised on the court's mistaken belief that amount was the statutory minimum, rather than the applicable statutory minimum of $300.

We find Carpio forfeited this claim by failing to raise it to the sentencing court; he neither objected to the amount nor sought clarification of how the court reached that sum.  (See *People v. Avila* (2009) 46 Cal.4th 680, 729 [failure to raise challenge below to trial court's discretionary determination of restitution fine forfeits argument on appeal].)

7

And we reject Carpio's assertion that the issue is not forfeited on the basis that counsel provided ineffective assistance by failing raise the issue below.

To prevail on a claim of ineffective assistance, a defendant must demonstrate both that "counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms," and resulting prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Reversal for ineffective assistance of counsel is warranted "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid.*) Carpio fails to make such a showing.

"Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) Section 1202.4, subdivision (b)(1) provides that a restitution fine of not less than $300 and not more than $10,000 "shall be set at the discretion of the court and commensurate with the seriousness of the offense." (§ 1202.4, subd. (b)(1).) Subdivision (b)(2) sets out a formula the court "may" use to determine the fine as "the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).)

The parties agree the court's calculation of "$300 times 8 times 3" referred to the $300 statutory minimum, the 8-year sentence imposed, and the three counts of conviction, reflecting the formula in section 1202.4, subdivision (b)(2). According to Carpio, the court's statement that there was " 'a restitution fund fine under 1202.4(b)(1) in the amount of $7200, which is

8

the minimum. $300 times 8 times 3' " can only be read to mean the court believed it did not have the discretion to impose a fine of less than $7,200. However, that is not the only logical reading as the court could have been saying that "it was the minimum of $300" times the other factors. Absent any indication that the court was confused about its authority or somehow thought $7,200 was the minimum, there is indeed no sound reason to believe the court was not aware of its authority. (See *People v. Gutierrez, supra*, 58 Cal.4th at p. 1390.)

We also decline to read that statement in isolation. The trial court emphasized the serious nature of the offenses both before and after imposing the restitution fine pursuant to section 1202.4, which allows a fine up to $10,000, the amount recommend by probation. (§ 1202.4, subd. (b)(1) [fine is to be set "at the discretion of the court and commensurate with the seriousness of the offense."].) Given the court's emphasis on the seriousness of the offense, it is unlikely it would have opted for $7,200 if it indeed believed that to be the minimum fine. In these circumstances, it is readily apparent why counsel may not have objected.

Accordingly, we conclude both that the issue was forfeited and that there was no ineffective assistance in failing to object to the fine.

### DISPOSITION

The judgment is affirmed.

9

_____

Petrou, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Rodríguez, J.

A168231/*People v. Carpio Perdomo*

10