Filed 8/30/24  P. v. Ramos CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082996 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2002264) |
| GUS RAMOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Matthew C. Perantoni, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Gus Ramos guilty of one count of oral copulation with a child aged 10 or younger (Pen. Code,[1] § 288.7, subd. (b)) and two counts of committing a lewd act against a child under the age of 14 (§ 288, subd. (a)). Ramos was sentenced to a prison for an indeterminate term of 15 years to life, plus a determinate term of five years.

Ramos contends that the trial court prejudicially erred in using CALCRIM No. 1193 to instruct the jury on the limited use it could make of expert testimony on child sexual abuse accommodation syndrome (CSAAS). According to Ramos, CALCRIM No. 1193 misstates the law. We conclude that Ramos's argument lacks merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

When Jane Doe was nine years old, she disclosed to adult family members that Ramos had sexually molested her.[2] After the family members notified police, Jane Doe detailed the acts of molestation in an interview with a forensic interviewer. Jane Doe described molestation that occurred when she was approximately five to eight years old. As a result, Ramos was charged with two counts of oral copulation with a child aged 10 or younger (§ 288.7, subd. (b)) (counts 1 and 2) and two counts of committing a lewd act against a child under the age of 14 (§ 288, subd. (a)) (counts 3 and 4).

Jane Doe testified at trial in a manner that was largely consistent with what she stated in her forensic interview. She also explained that she

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]    Because the details of the molestation are not relevant to our resolution of this appeal, we do not discuss them.

delayed in telling adults about the molestation because she was afraid of Ramos and because of how she believed her family would react.

During trial, an expert witness, Dr. Veronica Thomas, who was not familiar with the specific facts of Ramos's case, testified regarding CSAAS. Dr. Thomas explained that CSAAS addresses some of the "myths about the general responses that victims would give to sexual assault." Among other things, Dr. Thomas testified that one myth was that "once a kid or a young child was molested, they would immediately go tell somebody, but that's not true. In the real world, relationships are complicated and children don't necessarily go tell somebody immediately. Some people do, some kids do, but it's not usually how it happens." As Dr. Thomas explained, "where there is an established relationship between the two parties, there are psychological factors that complicate recollection, reporting, and recovery" and that "dictate whether or not and how those experiences are reported." Accordingly, "[m]any persons disclose their sexual abuse experiences immediately, and many do not."

Ramos testified in his own defense. He denied having done any of the things that Jane Doe described, and he denied having ever molested her.

The jury convicted Ramos on counts 2 through 4, but it acquitted him on count 1. The trial court sentenced Ramos to a term of 15 years to life, plus a term of five years.

## II.

## DISCUSSION

Ramos's sole contention on appeal is that the trial court erred in instructing the jury with CALCRIM No. 1193 on the limited use that it could make of Dr. Thomas's testimony regarding CSAAS. He contends that because CALCRIM No. 1193 misstates the law, the trial court should have

3

acceded to defense counsel's request that it instruct, instead, with CALJIC No. 10.64.

A. *The Trial Court's Instructions Regarding CSAAS*

We begin with a review of the procedural history relevant to the trial court's instructions on CSAAS.

During trial, defense counsel requested, without objection from the prosecutor, that the trial court instruct the jury with CALJIC No. 10.64 immediately prior to Dr. Thomas's testimony. Accordingly, before Dr. Thomas took the stand, the trial court instructed as follows with CALJIC No. 10.64:

> "[E]vidence is going to be presented to you through Dr. Thomas' testimony concerning Child Sexual Abuse Accommodation Syndrome. This evidence is not received and must not be considered by you as proof that the alleged victim's molestation claim is true. Child Sexual Abuse Accommodation Syndrome research is based upon an approach that is completely different from that which you must take in this case. The syndrome research begins with the assumption that a molestation has occurred and seeks to describe and explain common reactions of children to that experience. As distinguished from the research approach, you are to presume the defendant innocent. The People have the burden of proving guilt beyond a reasonable doubt. You should consider the evidence concerning the syndrome and its effect only for the limited purpose of showing if it does that the alleged victim's reactions, as demonstrated by the evidence, are not inconsistent with her having been molested."

Later, while discussing the instructions for the jury to use during its deliberations, defense counsel asked that the trial court again instruct with CALJIC No. 10.64, either alone, or in addition to CALCRIM No. 1193. The prosecutor objected, arguing that the trial court should instruct with CALCRIM No. 1193 alone. The trial court decided that it would instruct solely with CALCRIM No. 1193, which was presented to the jury as follows:

4

"You have heard testimony from Dr. Veronica Thomas regarding child sexual abuse accommodation syndrome.

"Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse.

"Dr. Thomas' testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged.

"You may consider this evidence only in deciding whether or not [Jane Doe's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

B.      *Standard of Review*

The issue here is whether, as Ramos contends, it was error to instruct with CALCRIM No. 1193. "A claim of instructional error is reviewed de novo." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) "In assessing a claim of instructional error, we examine the instructions as a whole. The test we apply is whether there is a reasonable likelihood the jurors would have understood the instructions in a manner that violated a defendant's rights. [Citation.] In this regard, we presume that jurors are intelligent individuals who are capable of understanding instructions and applying them to the facts of the case before them." (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1246.)

C.      *Case Law Allows Evidence Regarding CSAAS to be Used Only to Evaluate the Victim's Credibility*

" 'Expert testimony on "the common reactions of child molestation victims," known as CSAAS theory evidence, "is admissible to rehabilitate

5

such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." [Citation.] " 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " ' " (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 64.) "However, CSAAS evidence ' "is not admissible to prove that the complaining witness has in fact been sexually abused." [Citation.]' [Citation.] Similarly, an expert providing CSAAS testimony may not give ' "general" testimony describing the components of the syndrome in such a way as to allow the jury to apply the syndrome to the facts of the case and conclude the child was sexually abused.' " (*Ibid.*) "[I]n California law CSAAS evidence is relevant for the *limited* purpose of evaluating the credibility of an alleged child victim of sexual abuse." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*), italics added.)

Accordingly, when testimony concerning CSAAS is admitted, it is appropriate to instruct the jury that the evidence "should not be used to determine if the victim's claims are true." (*People v. Housley* (1992) 6 Cal.App.4th 947, 956–957 (*Housley*).) Specifically, the instruction should inform the jury "that (1) such evidence is admissible solely for the purpose of showing the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested; and (2) the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true." (*Id.* at p. 959.)

Numerous opinions have concluded that CALCRIM No. 1193 accurately instructs on the limited use of CSAAS evidence. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 503–504 (*Gonzales*); *People v. Munch* (2020)

6

52 Cal.App.5th 464, 473–474; *Lapenias, supra*, 67 Cal.App.5th at pp. 175–176; *People v. Ortiz* (2023) 96 Cal.App.5th 768, 816; *People v. Ramirez* (2023) 98 Cal.App.5th 175, 220 (*Ramirez*))  As we will explain, Ramos has not identified any basis for us to depart from that line of authority.

D.     *Ramos's Challenge to CALCRIM No. 1193 Lacks Merit*

 1.     *The Final Sentence of CALCRIM No. 1193 Did Not Impermissibly Instruct the Jury That It Could Use Dr. Thomas's Testimony to Conclude That the Molestation Occurred*

Ramos's main challenge to CALCRIM No. 1193 focuses on the last sentence of the instruction.  That sentence states, "You may consider [Dr. Thomas's testimony about CSAAS] only in deciding whether or not [Jane Doe's] conduct was consistent with the conduct of someone who has been molested, *and in evaluating the believability of the alleged victim*."  (Italics added.)  Ramos particularly takes issue with the phrase we have italicized. According to Ramos, because "it is impossible to evaluate the complaining witness's believability without evaluating whether her molestation allegations were true," the italicized phrase impermissibly instructs the jury to use the CSAAS testimony to decide whether Jane Doe was molested. Therefore, according to Ramos, the last sentence of CALCRIM No. 1193 conflicts with the previous sentence, which instructs that "Dr. Thomas' testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged."  We reject the argument.

Credibility and believability are synonyms.  (See Black's Law Dict. (12th ed. 2024 p. 463, col. 2) [defining "credibility" as "[t]he quality that makes something (as a witness or some evidence) worthy of belief"].) Therefore, in stating that the jury could use Dr. Thomas's testimony to evaluate "the believability of the alleged victim" the instruction was telling

7

the jurors they could use Dr. Thomas's testimony to evaluate Jane Doe's credibility. Case law expressly allows the jury to consider CSAAS evidence for expressly that purpose. (*Lapenias*, *supra*, 67 Cal.App.5th at p. 171 ["CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse."].)

Ramos's argument that CALCRIM No. 1193 improperly allows the jury to use Dr. Thomas's testimony as evidence that Ramos committed the molestation is flawed because it mistakenly conflates two *distinct* uses that can be made of the CSAAS evidence: (1) to evaluate the victim's credibility, which is *indirectly* relevant to the defendant's guilt; or (2) to *directly* establish that the defendant committed the offense. (Cf. *People v. Brackins* (2019) 37 Cal.App.5th 56, 71 [in the context of a jury instruction allowing the use of expert evidence to evaluate a victim's testimony about intimate partner violence, our Supreme Court explained that although "[e]xpert testimony may not be improperly used to *directly* determine whether the abuse occurred[,] . . . like much of the other evidence that comes in at a trial, it may be used *indirectly* to assist the jury in evaluating whether the alleged victim's statements are believable"].) Case law consistently distinguishes between the two uses of CSAAS evidence, permitting the former but not the latter. (*Housley*, *supra*, 6 Cal.App.4th at p. 956 [explaining that although the CSAAS evidence could not be used to prove the molestation occurred, such evidence was properly admitted "to rehabilitate [the victim's] credibility and to explain the pressures that sometimes cause molestation victims to falsely recant their claims of abuse"]; *People v. Bowker* (1988) 203 Cal.App.3d 385, 394 [explaining that although CSAAS evidence may not be "used to determine whether the victim's molestation claim is true," it may be used "to rebut defense attacks on the [victim's] credibility"].) Most significantly, our

8

Supreme Court has expressly stated that although CSAAS evidence is "not admissible to prove that the complaining witness has in fact been sexually abused," "it is admissible to rehabilitate such witness's credibility." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.)

In light of these authorities, although an evaluation of a victim's credibility is a *subsidiary* determination to an ultimate verdict of guilt, CALCRIM No. 1193 properly instructs that the jury may use the CSAAS evidence to evaluate that limited issue. (See *Ramirez, supra*, 98 Cal.App.5th at p. 219 [because "CSAAS evidence is relevant and admissible when an alleged victim's credibility has been attacked," there was no merit to the appellant's contention that CALCRIM No. 1193 improperly allowed the jury to consider the testimony of the CSAAS expert in evaluating the testimony of the victims].) Therefore, CALCRIM No. 1193 properly states that the jury may use CSAAS evidence "in evaluating the believability of the alleged victim," and that statement does not conflict with the remainder of the instruction.

In *Gonzales, supra*, 16 Cal.App.5th 494 the court evaluated an argument similar to Ramos's. Focusing on the last sentence of CALCRIM No. 1193, the defendant argued that it was "impossible to use the CSAAS testimony to evaluate the believability of [the victim's] testimony without using it as proof that [the defendant] committed the charged crimes." (*Id.* at p. 503.) Rejecting the argument, *Gonzales* explained that because the expert "testified that CSAAS is not a tool to help diagnose whether a child has actually been abused" and that "[t]he purpose of CSAAS is to understand a child's reactions when they have been abused," a reasonable juror "would understand it cannot use [the expert's] testimony to conclude [the victim] was, in fact, molested." (*Id.* at pp. 503–504.) The same reasoning applies

9

here.  Dr. Thomas testified that CSAAS is "not a diagnostic tool.  It's a therapy approach for persons that are thought to or could have been involved in a sexual abuse.  It's not about making the diagnosis."  Moreover, Dr. Thomas stated that she did not know about the facts of Ramos's case and had not talked to Jane Doe.  Dr. Thomas's testimony was stated generally and described behavior common to child sexual abuse victims as a group, rather than any individual victim, including Jane Doe.  Thus, as in *Gonzales*, a reasonable juror would understand, based on what Dr. Thomas explained, along with the text of CALCRIM No. 1193, that Dr. Thomas's testimony could not be used as proof that Jane Doe was molested.

2.      *CALCRIM No. 1193 Is Not Impermissibly Argumentative, and It Properly Instructs the Jury Without the Addition of the Items Included in CALJIC No. 10.64*

Ramos next contends that CALCRIM No. 1193 is "fundamentally *argumentative* because it expressly permits jurors to use CSAAS evidence to determine if the complaining witness's behavior is consistent with that of a sexual abuse victim, but ignores any inference that the same behavior might suggest the complaining witness is not being truthful."  (Italics added.)  According to Ramos, the instruction is flawed because it "pointed the jurors toward only one possible conclusion:  that [Ramos] was guilty."

An instruction is impermissibly argumentative when it is " ' "of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence." ' "  (*People v. Woods* (2015) 241 Cal.App.4th 461, 488.)  CALCRIM No. 1193 does not run afoul of this rule because it does not invite the jury to draw either a favorable *or* an unfavorable inference as to the truth of a victim's testimony.  Instead, the instruction does nothing more than limit the significance of the CSAAS evidence to the issue of credibility, without telling the jury *how* it should

10

resolve that issue.  As *Gonzales* explained, "The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior.  Thus, under CALCRIM No. 1193, a juror who believes [the CSAAS expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability *one way or the other*, and that the CSAAS evidence does not show she had been molested." (*Gonzales*, *supra*, 16 Cal.App.5th at p. 504, italics added.)  Significantly too, we note that the content of Dr. Thomas's testimony, if credited by the jury, did not point to any specific conclusion regarding Jane Doe's credibility.  Although Dr. Thomas testified that child sexual abuse victims may delay in reporting molestation, she also testified that children might *untruthfully* claim to have been molested.  Based on that testimony, a reasonable juror would not have understood CALCRIM No. 1193 as directing the jury to use Dr. Thomas's testimony to make only a *favorable* evaluation of Jane Doe's credibility.

Finally, Ramos contends that CALJIC No. 10.64 should have been given, instead of CALCRIM No. 1193, because CALCRIM No. 1193 "does not explain what CSAAS is, says nothing about the myths it is designed to rebut, does not inform the jury it may draw competing inferences, and provides only the most general guidance about how the jury may use that evidence." According to Ramos, CALJIC No. 10.64 more properly covers these issues. We reject the argument because we do not perceive any of the items identified by Ramos as necessary to a clear and understandable jury instruction on CSAAS evidence.  CALCRIM No. 1193 properly explained to the jury the limited use that it could make of the CSAAS evidence.  The other items that Ramos believes should have been included were either covered in more general instructions on how jurors should evaluate evidence and draw inferences, or by the details of Dr. Thomas's testimony, during which the jury

11

learned about the specific nature of CSAAS and the myths it was designed to rebut.[3]

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

CASTILLO, J.

---

[3] Ramos contends that the deficiencies he identifies in CALCRIM No. 1193 amount to a violation of his right to due process because they reduced the People's burden of proof. As we have rejected Ramos's contention that CALCRIM No. 1193 misstates the law, his argument that the purported misstatements amounted to a violation of his right to due process is without merit. (*Lapenias*, *supra*, 67 Cal.App.5th at p. 175 [agreeing with opinions holding that CALCRIM No. 1193 "does not . . . violate due process" or "misapply the burden of proof"].)