Filed 1/16/25  P. v. Ramirez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDWARD LEGASPI RAMIREZ,<br><br>    Defendant and Appellant. | H051009<br>(Santa Clara County<br>Super. Ct. No. C2014652) |

## I.  INTRODUCTION

A jury convicted defendant Edward Legaspi Ramirez of all 12 counts listed in the second amended information:  four counts of sexual penetration with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); counts 1–4);[1] one count of assault with intent to commit a lewd or lascivious act on a child (§§ 220, subd. (a)(2), 288, subd. (a); count 5); six counts of lewd or lascivious acts on a child under the age of 14 (§ 288, subd. (a); counts 6–11); and one count of sending harmful matter to a minor (§ 288.2, subd. (a)(2); count 12).  Concerning counts 5–12, the second amended information alleged that the victim was particularly vulnerable and that defendant took advantage of a position of trust or confidence to commit the offenses.  (§ 1170, subd. (b); Cal. Rules of Court, rules 4.421(a)(3), 4.421(a)(11).)  Defendant waived his right to a jury trial on these

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

alleged aggravating circumstances, and the trial court found the alleged aggravating circumstances true. The trial court sentenced defendant to a total prison term of 15 years to life consecutive to five years.

On appeal, defendant asserts that the trial court erred in admitting expert testimony concerning Child Sexual Abuse Accommodation Syndrome (CSAAS) and that the trial court erroneously instructed the jury that CSAAS evidence could be considered to evaluate the believability of the alleged victim, depriving defendant of his right to due process. For reasons that we will explain, we will affirm the judgment.

## II. BACKGROUND

Defendant lived in the same home as the victim, J.D.[2] Defendant was J.D.'s cousin, but he was nearly 40 years older than J.D. and J.D. referred to defendant as an uncle. In October 2020, a domestic disturbance occurred between J.D.'s parents. J.D., who was 11 years old at the time, positioned herself between her parents and told them that defendant had been touching her. J.D. told a police officer who responded to the domestic disturbance that defendant had twice touched her "private part," meaning her vagina. In a later interview and then at trial, J.D. described more numerous and extensive incidents of sexual abuse by defendant against her starting when she was five years old including that he touched her vaginal area, inserted his finger inside her vagina, and masturbated while touching her vaginal area.

At trial, the prosecution called six witnesses: J.D., J.D.'s mother, J.D.'s cousin, two police officers, and clinical psychologist Dr. Blake Carmichael. Prior to trial, the trial court ruled that Dr. Carmichael could testify as to CSAAS, but it ordered certain limits on Dr. Carmichael's testimony and stated that it would provide the instruction outlined in CALCRIM No. 1193 concerning the limited relevance of this testimony.

---

[2] A pseudonym was used for the victim's last name in the information and at trial. We refer to her by the initials of the name used in the proceedings below to protect her privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4).)

At trial, Dr. Carmichael testified that CSAAS was developed "to educate people, to help inform people about kids who have been sexually abused, because then and still today there are myths and misconceptions or preconceived notions that people have about expectations for how they hope a kid would react or how they hope a kid would tell about the sexual abuse." He testified that CSAAS "helps people understand the context of the abuse and why there's such a wide variety of ways that kids respond to and tell about sexual abuse." After the trial court recognized Dr. Carmichael as an expert in CSAAS, Dr. Carmichael testified that he was not familiar with any of the facts of this case. He identified five "categories or components to CSAAS": secrecy; helplessness; entrapment and accommodation; delayed, unconvincing, and conflicted disclosure; and recantation or retraction. Concerning these five categories, Dr. Carmichael testified: "It's not a checklist. They're concepts that were kind of presented to help people understand the context of abuse and why there's a variety of things. So there's no diagnosis. There's no checklist or test you can use to determine if a kid was abused or not. That's why we have the legal process and juries. So it really does help people understand the context in which abuse does occur." Asked if there is "anything about CSAAS that's used to determine that sexual abuse has occurred," Dr. Carmichael responded: "No. That's backwards. You can't use CSAAS or anything else for that matter to say abuse occurred really. So we're talking about kids who were abused and describing those experiences so people can better understand them, support them, and treat them. So that's how it's used: To educate." Dr. Carmichael then testified in more detail concerning each of the five CSAAS categories without reference to the facts of the instant case. In concluding his direct examination of Dr. Carmichael, the prosecutor asked: "[A]re you here today to provide any sort of opinion about whether anyone in this case was sexually abused?" Dr. Carmichael replied: "No. That's the jury's responsibility, and I would not form such an opinion."

The defense called one witness, a social worker who interviewed J.D. five weeks before J.D.'s October 2020 disclosure in response to a different report of domestic violence in the home. The social worker testified that J.D. denied in this earlier interview that she had experienced any sexual abuse. Defendant did not testify.

The appellate record provides nothing to demonstrate that defendant objected to the trial court instructing the jury in accordance with CALCRIM No. 1193, which addresses CSAAS testimony. In his trial brief, defendant stated that CALCRIM No. 1193 is "specifically on point" concerning his request to limit or restrict CSAAS testimony should such testimony be permitted. In discussions concerning the prosecution's motion in limine to restrict defense cross-examination of Dr. Carmichael, the trial court noted that CALCRIM No. 1193 "limits how a jury is supposed to understand CSAAS testimony," and defendant expressed no concerns regarding this instruction. Accordingly, the trial court instructed the jury consistent with CALCRIM No. 1193 as follows: "You have heard testimony from Blake Carmichael regarding Child Sexual Abuse Accommodation Syndrome. Child Sexual Abuse Accommodation Syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the Accommodation Syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. Blake Carmichael's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [J.D.'s] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

The prosecutor's argument to the jury stated that in evaluating J.D.'s testimony, the jury could consider J.D.'s testimony and demeanor on the stand, her prior statements to law enforcement, and "the other thing you can use when you're evaluating [J.D.'s] testimony specifically is these concepts you learned from Dr. Carmichael about Child Sexual Abuse Accommodation Syndrome." Later in his argument, the prosecutor

4

addressed Dr. Carmichael's testimony, recounting the five CSAAS categories and stating that "I want to re-emphasize to you . . . that these are not things that you look at, try to decide did [J.D.] have these things[;] therefore, something happened to her." The prosecutor argued that CSAAS evidence could explain why J.D. "may have acted in some ways that you might, without knowing this information, have thought that's a little weird." For example, the prosecutor argued that CSAAS testimony could help explain why J.D. would be reluctant to report the abuse and why she first disclosed only two instances of defendant touching her. Defendant's trial counsel also addressed Dr. Carmichael's testimony in argument, arguing that there were "red flags" in Dr. Carmichael's testimony because CSAAS was not recognized by certain organizations and because CSAAS is "circular" in that "[e]verything can be true." Defendant's trial counsel argued: "So I'm just asking to not let CSAAS as a concept dilute your diligence and how critical you are into approaching the evidence in our case."

This appeal followed after the jury's verdicts and sentencing.

### III. DISCUSSION

#### A. *Expert CSAAS Testimony*

Defendant contends that the trial court erred in admitting Dr. Carmichael's testimony and that the admission of Dr. Carmichael's testimony violated his right to due process "because it allowed the jury to make the unreasonable inference that, because [J.D.] acted in ways that children who have been molested act, as described by Dr. Carmichael, she was a credible witness, despite evidence to the contrary." Additionally, defendant argues that admission of the CSAAS testimony prejudiced him, requiring reversal of the judgment, and that if this issue is considered forfeited by his trial counsel's failure to more specifically object to Dr. Carmichael's testimony, he received ineffective assistance of counsel. The Attorney General responds that no error occurred in admitting Dr. Carmichael's testimony because "[a]lthough the admissibility of CSAAS evidence has been limited in some jurisdictions, California courts have properly allowed

5

the use of such evidence for limited credibility evaluation purposes." Alternatively, the Attorney General argues that defendant was not prejudiced by admission of this evidence, and that defendant's trial counsel was not ineffective for failing to specifically object to CSAAS testimony on the grounds he now asserts on appeal. We find no error in the admission of Dr. Carmichael's testimony.

### 1. Legal Principles and Standard of Review

Expert opinion testimony is admissible in part when the subject matter is "beyond common experience" and the opinion would "assist the trier of fact." (Evid. Code, § 801, subd. (a).) " 'When expert opinion is offered, much must be left to the trial court's discretion.' [Citation.] The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion. [Citations.]" (*People v. McDowell* (2012) 54 Cal.4th 395, 426 (*McDowell*).)

"Trial courts may admit CSAAS evidence to disabuse jurors of five commonly held 'myths' or misconceptions about child sexual abuse. [Citation.] While CSAAS evidence is not relevant to prove the alleged sexual abuse occurred, it is well established in California law CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse. [Citations.]" (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*).) CSAAS evidence "is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394.) "For instance, where a child delays a significant period of time before reporting an incident or pattern of abuse, an expert could testify that such delayed reporting is not inconsistent with the secretive environment often created by an abuser who occupies a position of trust." (*Ibid.*) CSAAS evidence "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's

conduct after the incident -- e.g., a delay in reporting -- is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. [Citation.] The great majority of courts approve of such expert rebuttal testimony.' [Citation.]" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301, fn. omitted (*McAlpin*).)

### 2. Analysis

Defendant does not argue that Dr. Carmichael's testimony was not relevant to rehabilitate J.D.'s believability as a witness. Dr. Carmichael's testimony provided relevant evidence to the jury in deciding whether J.D.'s conduct was not inconsistent with the conduct of someone who had been molested and in evaluating her believability. For example, Dr. Carmichael testified about how victims of child sexual abuse can delay disclosure of the abuse or disclose the abuse incrementally. Therefore, the trial court did not abuse its discretion in concluding that the testimony involved a matter "beyond common experience" that would assist the jury. (Evid. Code, § 801, subd. (a).)

Defendant argues that CSAAS evidence should generally be inadmissible because it is unreliable and because by its very nature, CSAAS evidence will always support the conclusion that abuse occurred because it suggests that both intuitive and counterintuitive behavior support an alleged victim's credibility. He asserts that while "California has accepted the admissibility of CSAAS evidence, courts have acknowledged the inherent problems with such evidence," citing cases largely from other jurisdictions. Defendant acknowledges that in *McAlpin*, the California Supreme Court held that CSAAS evidence is admissible to rebut common misperceptions about victim behavior, and that this court is bound by the decisions of our Supreme Court. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1302.) However, defendant argues that *McAlpin* is "no longer an accurate reflection of current understandings of how children respond to abuse," and that recent

decisions from Courts of Appeal in this state applying *McAlpin* were wrongly decided. Defendant asserts that jurors are no longer likely to hold the misconceptions that CSAAS evidence addresses, and that the admission of CSAAS evidence deprived him of due process by permitting the jury to infer that J.D. was a credible witness.

Our state Supreme Court indicated in *McAlpin* that CSAAS expert testimony is admissible to disabuse jurors of commonly held misconceptions about child sexual abuse victims' behavior and to explain seemingly contradictory behavior of a child sexual abuse victim. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1302.) The California Supreme Court's decisions are binding on all lower courts in this state. (*People v. Johnson* (2012) 53 Cal.4th 519, 528.) "CSAAS evidence has been admitted by the courts of this state since the 1991 *McAlpin* decision." (*People v. Munch* (2020) 52 Cal.App.5th 464, 468 (*Munch*).) "Further, reviewing courts have routinely held the admission of CSAAS evidence does not violate due process. [Citations.]" (*Lapenias*, *supra*, 67 Cal.App.5th at p. 174.) Defendant's references to decisions from other jurisdictions that reached a different position do not affect the binding nature of the *McAlpin* decision. The *McAlpin* decision "is binding on all lower courts in this state. [Citation.] That other jurisdictions may disagree with it does not change its impact on California cases. [Citation.]" (*Munch*, *supra*, at p. 468.) Accordingly, we adhere to precedent from our state Supreme Court that CSAAS evidence is generally admissible for the limited purposes for which it was admitted in the instant case. We therefore find no abuse of discretion in the trial court's admission of this evidence.[3] (See *McDowell*, *supra*, 54 Cal.4th at p. 426.) Because no abuse of discretion occurred in admitting Dr. Carmichael's testimony, we

---

[3] Defendant argues that the trial court's admission of Dr. Carmichael's testimony is reviewed de novo because the question presented is whether the trial court correctly construed the Evidence Code in admitting the evidence. Assuming without deciding that the de novo standard of review applies, our conclusion remains that the trial court did not err.

need not address whether any error prejudiced defendant or whether defendant's trial counsel was ineffective.

## B. Instruction Regarding CSAAS Testimony

Defendant also contends that the trial court erred by using CALCRIM No. 1193 to instruct the jury regarding Dr. Carmichael's testimony. Defendant argues: "CALCRIM [No.] 1193 does not inform the jurors that CSAAS assumes the truth of the complaining witnesses' claims. It fails to instruct the jury that the evidence is relevant only to educate the jurors about how molested children may act in general. Instead, it tells the jurors they may consider the evidence in 'evaluating [victims'] believability,' " which defendant asserts improperly invites the jury to consider CSAAS evidence to support an alleged victim's allegations against a defendant. As a result, defendant asserts that the trial court erred in using CALCRIM No. 1193, and that the alleged error deprived him of his right to due process.

### 1. Legal Principles and Standard of Review

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.]" (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

"A jury instruction may ' "so infuse[] the trial with unfairness as to deny due process of law." ' [Citation.] However, ' "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is ' "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." ' " ' [Citation.] ' "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." ' [Citations.] ' "If the charge as a whole is ambiguous, the question is whether there is a ' "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " ' [Citation.]" (*People v. Lemcke* (2021) 11 Cal.5th 644, 655.)

9

## 2. Analysis

Defendant did not object to the use of CALCRIM No. 1193 at trial. Instead, defendant's trial brief expressed agreement with the substance of the instruction. Based on this, the Attorney General urges this court to conclude that defendant has forfeited this issue. Defendant cites section 1259 in arguing that forfeiture should not apply because his substantial rights were impacted by the use of this instruction.[4]

We need not decide whether forfeiture applies in this matter because the trial court did not err in instructing the jury in accordance with CALCRIM No. 1193. It is not reasonably likely that jurors understood the instruction as permitting the use of Dr. Carmichael's testimony for the improper purpose of proving that defendant sexually abused J.D. CALCRIM No. 1193 specifically informed jurors that CSAAS evidence "is not evidence that the defendant committed any of the crimes charged against him." To the extent that the instruction allowed the jury to consider CSAAS evidence in evaluating the believability of J.D.'s testimony, the instruction is proper. CSAAS evidence is relevant and admissible when an alleged victim's credibility has been attacked. (See *McAlpin*, *supra*, 53 Cal.3d at p. 1302 [expert opinion that it is not unusual for a parent to refrain from reporting a known child molestation was "clearly relevant [citation] because it tended to rehabilitate the testimony" of the victim's mother as a corroborating witness].) Thus, nothing about the language of CALCRIM No. 1193 supports defendant's argument that his right to due process was violated.

When combined with Dr. Carmichael's testimony stressing the limited nature of his testimony and the prosecutor's argument reemphasizing the limits of CSAAS evidence, the instruction would not cause the jury to believe that they could consider Dr. Carmichael's testimony as proof that defendant sexually abused J.D. As defendant

---

[4] Section 1259 states in relevant part: "The appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

acknowledges, the Court of Appeal in *People v. Gonzales* (2017) 16 Cal.App.5th 494 (*Gonzales*) rejected a similar argument to the one defendant raises here. In *Gonzales*, the court noted that CALCRIM No. 1193 "must be understood in the context" of the expert's testimony, which in that case stated that "CSAAS is not a tool to help diagnose whether a child has actually been abused." (*Gonzales*, *supra*, at p. 503.) In this context, the court held, a reasonable juror would understand CALCRIM No. 1193 to mean that the jury could use the expert's testimony to conclude that the alleged victim's behavior "does not mean she lied when she said she was abused," not that the alleged victim "was, in fact, molested." (*Gonzales*, *supra*, at p. 504.) The court concluded: "The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the alleged victim's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Ibid.*) Other courts have come to similar conclusions regarding CALCRIM No. 1193. (See *Lapenias, supra*, 67 Cal.App.5th at pp. 175–176; *Munch*, *supra*, 52 Cal.App.5th at p. 474.) This court has also held that instructing the jury with CALCRIM No. 1193 regarding testimony from a CSAAS expert is not erroneous. (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 219–220; *People v. Ortiz* (2023) 96 Cal.App.5th 768, 782, 816.) We follow the same approach here. Because the instruction correctly informed the jury of the permissible and impermissible uses of Dr. Carmichael's testimony, and because there is no reasonable likelihood that the jury misconstrued or misapplied the instruction in the manner asserted by defendant, the trial court did not err in instructing the jury with CALCRIM No. 1193, and defendant's due process right was not denied.

## IV. DISPOSITION

The judgment is affirmed.

11

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*People v. Ramirez*
**H051009**