Filed 5/15/26  P. v. Zuniga CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084371 |
| v. | (Super.Ct.No. INF2001378) |
| JUAN ZUNIGA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant and appellant Juan Zuniga was convicted by a jury of various sex offenses committed against more than one minor victim. He appeals, arguing that the judgment of conviction must be reversed because: (1) the trial court erroneously admitted expert testimony on Child Sexual Abuse Accommodation Syndrome (CSAAS); (2) he received ineffective assistance of counsel when his trial counsel failed to object to specific CSAAS testimony; (3) the trial court erred by instructing the jury with the pattern jury instruction on CSAAS evidence (CALCRIM 1193); and (4) the cumulative prejudice from these errors requires reversal even if no single error is prejudicial.

We conclude that (1) defendant forfeited his claims of evidentiary error; (2) defendant was not prejudiced by any allegedly improper CSAAS testimony; (3) the trial court did not err in instructing the jury; and (4) in the absence of multiple instances of prejudicial error, there is no prejudice to cumulate. Thus, we affirm the judgment.

# II. BACKGROUND

A. *Facts and Charges*

In 2020, two victims came forward and reported to law enforcement that they had been subject to various acts of sexual abuse by defendant. As a result, defendant was charged with (1) committing a lewd act upon a child under the age of 14 years (count 1; Pen. Code,[1] § 288, subd. (a)); (2) six counts of committing a lewd act upon a child under the age of 14 years by use of force or fear (counts 2-7; § 288, subd. (b)(1)); (3) one count

---

[1] Undesignated statutory references are to the Penal Code.

of rape of a child under the age of 14 years by use of force or fear (count 8; § 269, subd. (a)(1)); and (4) one count of sodomy of a child under the age of 14 years by force or fear (count 9; § 269, subd. (a)(3)). With respect to counts two through seven, the information also alleged the aggravating circumstance that defendant's convictions in the present case involved more than one victim. (§ 667.61, subd. (e)(4)).

B. *Relevant Evidence at Trial*[2]

During the prosecution's case-in-chief, both of the victims testified extensively regarding their relationship with defendant and the acts of abuse they claim defendant committed when the victims were teenagers. Both victims were also cross-examined by defense counsel, including questions related to the victims' abilities to recollect details of the alleged abuse and one victim's failure to report the abuse earlier.

After the victims testified, the prosecution called an expert to testify regarding CSAAS. The expert testified that she is a licensed clinical and forensic psychologist. She explained that CSAAS is "a theory for understanding the many ways in which kids, at different developmental ages, may talk of their experiences of sex abuse by someone they know." She explained that the theory involves multiple components: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, and (4) delayed and discrepant disclosure.

The prosecutor asked the expert to elaborate on each component of CSAAS

---

[2] Because on appeal defendant challenges only the admission of CSAAS testimony and the use of the pattern jury instruction related to CSAAS, we summarize only the portions of the record relevant to disposition of these issues.

theory. During this line of questioning, the prosecutor asked: "As it relates to secrecy, would physical domestic violence within a household have an impact on secrecy?" The expert responded: "Research, the social science research . . . has provided information that outlines that in situations where there's anger, aggression, domestic violence, substance abuse, high volume of emotion, the likelihood is far greater for sex abuse of minors, yes." No objection was asserted in response to this testimony, and the prosecutor moved on to question the expert about the next CSAAS component.

After describing each CSAAS component in detail, the prosecutor posed several hypothetical questions to the expert. In response to these questions, the expert testified to the following: (1) it would not be uncommon for a 12- or 13-year-old child who had been molested by a biological father to be unable to recall the exact month or year in which the molestation occurred; (2) it would not be uncommon for a 12- or 13-year-old child to fail to immediately scream for help during a molestation even if someone else was in the home; (3) it would not be uncommon for a child to become frustrated if an initial disclosure to a parent is met with admonition or questioning; (4) it is common for disclosure by one individual to be prompted by the disclosure of another victim of the same assailant; and (5) it is not unusual for a child to selectively share certain things with a trusted counselor while maintaining secrecy about other potential abuse.

At the conclusion of her testimony, the expert was specifically asked: "Does [CSAAS] . . . factor in or attempt in any way to distinguish valid claims of sexual assault from invalid claims that are a fantasy or deception?" In response, the expert explained that "[i]t's not about deciding, knowing whether something did or didn't happen" but

4

only a "way of understanding the behavior of a victim."

C. *Jury Instructions, Verdict, and Judgment*

The jury was instructed with CALCRIM 1193, which explained: "You have heard testimony from [an expert] regarding [CSAAS]. [¶] [CSAAS] relates to a pattern of behavior that may be present in a child sexual abuse cases [sic]. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. [¶] [The expert's] testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [the victims'] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."

The jury was also instructed with the pattern instructions regarding expert witness testimony. The instruction explained that the jury may consider an expert's opinion but is not required to accept the opinion as true or correct. It further explained that, when an expert is asked a hypothetical question based upon assumed facts, it is up to the jury to decide whether the assumed facts have been proven by the evidence at trial.

The jury convicted defendant on all counts. The trial court sentenced defendant to an indeterminate term of 100 years to life in state prison.[3] Defendant appeals.

_____

[3] Specifically, the trial court sentenced defendant to (1) 25 years to life in state prison on count 1 (§ 288, subd. (a)); (2) a consecutive 25 years to life on count 2 (§ 288, subd. (b)(1)); (3) a consecutive 25 years to life on count 5 (§ 288, subd. (b)(1)); and (4) a consecutive 25 years to life on count 7 (§ 288, subd. (b)(1)). The trial court also imposed sentence on the other counts but stayed execution under section 654.

III. DISCUSSION

A. *Evidentiary Error*

On appeal, defendant contends that reversal is required because the prosecution's expert on CSAAS made specific statements that constituted inadmissible opinion during her testimony. Specifically, defendant objects to: (1) testimony that could be interpreted to suggest there was a greater likelihood of sexual abuse when other dysfunctional family circumstances exist; and (2) testimony regarding whether specific hypothetical situations that mirrored some of the facts of the case were consistent with common patterns of disclosure in abuse victims. We agree with the People that any claim of error regarding CSAAS testimony has been forfeited.

1. General Legal Principles and Standard of Review

Generally, "[e]xpert testimony on 'the common reactions of child molestation victims,' known as CSAAS theory evidence, 'is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*People v. Julian* (2019) 34 Cal.App.5th 878, 885.) "Trial courts may admit CSAAS evidence to disabuse jurors of five commonly held 'myths' or misconceptions about child sexual abuse." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*); *People v. Ramirez* (2023) 98 Cal.App.5th 175, 214-215 (*Ramirez*).) It is now well accepted that such evidence is not admissible "to prove the alleged sexual abuse occurred" but only "for the limited purpose of evaluating the credibility of an alleged child victim of sexual

6

abuse." (*Ibid.*)  The trial court's decision to admit any specific CSAAS testimony is usually reviewed for abuse of discretion.  (*Ramirez*, at p. 214.)

2.  Defendant Has Forfeited His Claims of Evidentiary Error

The California Supreme Court has " 'consistently held that [a] "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' "  (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.)  "The objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal." ' "  (*Id.* at p. 434.)

Thus, the failure to raise a specific objection in the trial court to the admission of evidence forfeits the issue on appeal.  (*People v. Doolin* (2009) 45 Cal.4th 390, 434; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 412-413 (*Wheeler*).)  This is true even where the defendant asserts a general objection prior to the witness's testimony but fails to assert a more specific objection at the time the witness purportedly exceeds the scope of permissible testimony on the stand.  (*People v. Schultz* (2020) 10 Cal.5th 623, 677 [moving prior to trial to limit the scope of victim impact testimony not sufficient to preserve objection that specific testimony actually offered at trial exceeded scope of permissible testimony]; *People v. Barrett* (2025) 17 Cal.5th 897, 968-969 [same].)

Here, defendant does not argue that expert testimony on CSAAS should have been entirely excluded.  Instead, he contends only that "some" of the expert testimony at trial exceeded the scope of what is permissible under the law.  However, defendant concedes

7

that at the time of trial, he never objected to the challenged testimony based upon the grounds he now raises on appeal. In our view, the rule of forfeiture is particularly appropriate where, as here, defendant identifies only specific statements made by the expert as inadmissible. Even assuming, without deciding, that any specific statement was inadmissible, the failure to object deprived the prosecution of the ability to clarify any ambiguities in the testimony and deprived the trial court of the opportunity to give a curative admonition where appropriate. (See *Wheeler*, *supra*, 60 Cal.4th at p. 410.) Thus, we agree with the People that defendant's claims of evidentiary error have been forfeited.

     3. <u>The Record Does Not Show Prejudice</u>

     Even absent forfeiture, we would find no prejudice warranting reversal. "Ordinarily, the erroneous admission of evidence is reviewed for prejudice under the standard described in *People v. Watson* (1956) 46 Cal.2d 818 . . . , which requires reversal only if the defense shows it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Roberts* (2017) 13 Cal.App.5th 565, 576-577.)

     Here, defendant concedes that expert testimony on CSAAS was generally relevant and admissible given the facts of this case. He argues only that it is inadmissible to the extent that such testimony is used to prove the defendant actually committed the alleged acts of abuse, and that "some" of the expert's statements could have been relied upon for that improper purpose.

8

However, the record shows that on more than one occasion, the CSAAS expert made clear that she was not offering an opinion as to whether defendant actually committed any alleged acts of abuse. She emphasized that the process of disclosure in any victim is an individualized process that differs based upon the specific circumstances of a particular case; clarified that she did not review any reports or other paperwork specific to this particular case; and explicitly stated at the conclusion of her testimony that CSAAS is "not about deciding, knowing whether something did or didn't happen" but only "a way of understanding the behavior of a victim." Further, in closing argument, the prosecution did not reference any of the specific testimony that defendant now finds objectionable. Instead, each time the prosecutor referenced the expert's testimony, the prosecutor urged consideration of the expert's testimony only for the purpose of evaluating the credibility of the victim's testimony.

Defendant concedes that the CSAAS expert never offered the opinion that the victims had, in fact, been sexually abused; defendant argues, however, that the testimony could have permitted the jury to be " 'distracted . . . from its duty to decide the properly admitted evidence.' " But, even if we assumed that the expert's testimony left open this possibility, the record shows that the trial court specifically instructed the jury that: (1) the expert's testimony could not be used to determine whether defendant actually committed the crimes charged; (2) the expert's testimony could only be used to evaluate the credibility of the victim's testimony; and (3) the jury must decide on its own whether any assumed facts in a hypothetical question were actually true based upon the evidence. "We presume that jurors follow the instructions provided by the court in the absence of a

showing to the contrary" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 821),

and nothing in the record suggests the jury failed to follow the trial court's instructions.[4]

Thus, even if we assumed that the expert made some statements that should have

been excluded because the statements could be misinterpreted by the jury, we would find

no prejudice from introduction of these statements. The record in this case shows that the

CSAAS expert explicitly informed the jury that CSAAS could not be used to determine

whether any allegation of abuse was valid; the prosecution did not urge the jury to

consider any of the expert's testimony for that purpose; and the jury instructions

expressly instructed the jury not to consider the expert's testimony for any purpose other

than evaluating the credibility of the victims' testimony. Given this record, defendant has

not shown a reasonable probability of a more favorable outcome had any specific

statements by the CSAAS expert been excluded.

4. The Record Does Not Establish Ineffective Assistance of Counsel

Defendant also argues that his trial counsel rendered ineffective assistance by

failing to object to the allegedly inadmissible statements made by the CSAAS expert.

"An ineffective assistance of counsel claim has two elements: a defendant must show

that their counsel's performance was deficient, *and* that this deficient performance

prejudiced the defense." (*In re Tellez* (2024) 17 Cal.5th 77, 88.) However, in order to

---

[4] Nevertheless, we caution against the use of hypothetical questions that mirror the facts of the case before the court. We agree that "the better practice is to limit the expert's testimony to observations concerning the behavior of abused children as a class and to avoid testimony which recites either the facts of the case at trial or obviously similar facts." (*People v. Gilbert* (1992) 5 Cal. App.4th 1372, 1384)

show prejudice, a defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Ibid*.) Because we have concluded that the record does not show defendant was prejudiced by the admission of the evidence he now claims was erroneously admitted, defendant has also failed to show prejudice from his trial counsel's failure to object to this evidence.[5]

## B. *Instructional Error*

Defendant also contends that the trial court erred by instructing the jury with CALCRIM 1193, the pattern instruction on CSAAS expert testimony. Specifically, defendant asserts that CALCRIM 1193 itself is an incorrect statement of the law.[6] "The independent or de novo standard of review is applicable in assessing whether instructions

---

[5] We further observe that even if trial counsel had asserted a contemporaneous objection to the testimony defendant now challenges on appeal, an appropriate remedy would have been for the trial court to admonish the jury regarding the limited purpose for which the expert's testimony could be considered. (*People v. Parker* (2022) 13 Cal.5th 1, 76; *People v. Bennett* (2009) 45 Cal.4th 577, 595.) However, the record shows that the jury instructions actually given served this same purpose.

[6] For this reason, we disagree with the People that defendant's claim of instructional error has been forfeited. Generally, "[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal." (*People v. Lee* (2011) 51 Cal.4th 620, 638.) However, "that rule [of forfeiture] does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.)

correctly state the law" (*People v. Posey* (2004) 32 Cal.4th 193, 218), and we conclude that the trial court did not err by instructing the jury with CALCRIM 1193.

Defendant argues that CALCRIM 1193 constitutes an incorrect statement of the law because it permits jurors to draw impermissible inferences of guilt as opposed to limiting the jury's consideration of any such evidence to evaluation of a victim's credibility. However, "multiple California Courts of Appeal have upheld the language of CALCRIM 1193 as accurately informing the jury of the limited use of CSAAS evidence." (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 816; *People v. Ramirez* (2023) 98 Cal.App.5th 175, 219; *Lapenias*, *supra*, 67 Cal.App.5th at pp. 175-176; *People v. Munch* (2020) 52 Cal.App.5th 464, 473-474; *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503-504.) Defendant concedes that his argument in this appeal is contrary to established authority but argues that all of these cases were wrongly decided. We find the analysis presented in each of these cases persuasive and decline defendant's invitation to depart from the weight of authority on this point.

Defendant also contends that despite the weight of authority on this point, no published authority has considered the current version of CALCRIM 1193 used at his trial, and that the wording of the current version does not accurately reflect the law. However, during the pendency of this appeal, our colleagues in Division 1 of this district decided *People v. Page* (2025) 114 Cal.App.5th 1022, which considered this very issue.

As explained in *Page*, the slight modification to CALCRIM 1193 made in 2022[7] improves the clarity of the instruction and "does not misadvise the jury on the limited use of CSAAS testimony." (*Page*, at pp. 1031-1032.) We agree with the persuasive analysis set forth in *Page* that the modifications made to CALCRIM 1193 do not substantively impact the analysis of prior decisions concluding that CALCRIM 1193 constitutes a correct statement of the law.

Thus, defendant has failed to show the trial court erred by instructing the jury with CALCRIM 1193. Because we find no instructional error, we need not reach defendant's argument that the use of CALCRIM 1193 was prejudicial.

C. *Cumulative Error*

Finally, defendant argues that the cumulative effect of the errors identified on appeal deprived him of his federal due process right to a fair trial. "Under the cumulative error doctrine, a series of trial errors that were individually harmless may be prejudicial if in the aggregate the errors deprived the defendant of a fair trial." (*Page*, *supra*, 114 Cal.App.5th at pp. 1034-1035.) However, we have concluded that there was no instructional error in this case. Further, we have explained that, despite forfeiture of his claims of evidentiary error, the record does not show that defendant was prejudiced by the introduction of any of the CSAAS testimony he now claims should have been

---

[7] In 2022, CALCRIM 1193 was revised to remove a double negative, replacing the phrase " 'not inconsistent with' " with the phrase " 'consistent with.' " (*Page*, at pp. 1030-1031.) It also added a new paragraph stating that CSAAS evidence "is offered only to explain certain behavior of an alleged victim of child abuse." (*Ibid.*)

excluded. Thus, having determined that no prejudicial error occurred in this case, we conclude that there is no cumulative prejudicial error warranting reversal.

## IV. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS _____
J.

We concur:

MILLER _____
Acting P. J.


RAPHAEL _____
J.